**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOLLY-JEANNE RIZZATI AS ADMINISTRATOR FOR THE ESTATE OF KRISTINE RIZZATI, TAMARA SIMPSON AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF JUDITH FORSETH, ELLISA MARTIN AS POWER OF ATTORNEY FOR DATHEL BALCH, DELORIS WHITAKER AS EXECUTOR FOR THE ESTATE OF RUFUS WHITAKER AND MICHAEL HAWKINS AS ADMINISTRATOR FOR THE ESTATE OF MARIA GRAHAM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against –<br><br>COMPU-LINK CORPORATION D/B/A CELINK, CARRINGTON MORTGAGE SERVICES, LLC and FINANCE OF AMERICA REVERSE, LLC.<br><br>Defendants. | Case No.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ...................................................................................4

II.     DECISION OF THE SECOND CIRCUIT IN RELATED ACTION.......................8

III.    JURISDICTION AND VENUE............................................................................10

IV.     THE PARTIES.......................................................................................................10

V.      REVERSE MORTGAGE LOANS AND FEDERALLY INSURED
        HOME EQUITY CONVERSION MORTGAGES (HECMs)...............................16

VI.     STATEMENT OF FACTS ....................................................................................19

        A.      VIOLATIONS OF FEDERAL LAWS AND REGULATIONS....................19

                Imposition of Unlawful Servicing Fees......................................................20

                        (i).    Violations of 24 C.F.R. §206.125(b) .........................................20

                        (ii).   Violations of 24 C.F.R. §206.125(d) .........................................22

                        (iii).  Violations of 24 C.F.R. §206.140 ..............................................23

                        (iv).   Violations of 24 C.F.R. §203.552..............................................25

                        (v).    Violations of 24 C.F.R. §206.207..............................................27

        B.      VIOLATIONS OF NEW YORK LAWS AND REGULATIONS..................30

                        (i).    Defendants do Not Comply with the
                                N.Y. Property Law 280 and 280-a............................................31

                        (ii).   Defendants do Not Comply with the N.Y. Property Law 280-b.........31

        C.      VIOLATIONS OF CALIFORNIA LAWS AND REGULATIONS.................32

        D.      CHARGING INSPECTION FEES IN VIOLATION OF STATE LAWS .................32

        E.      BREACHES OF STANDARDIZED HECM LOAN AGREEMENTS.................33

        F.      UNFAIR AND DECEPTIVE MISSTATEMENTS OF HECM PRINCIPAL BALANCES..........33

        G.      PLAINTIFFS' INJURIES.................................................................................34

VII.    CLASS ACTION ALLEGATIONS....................................................................37

VIII.   CELINK IS AN AGENT AND ATTORNEY-IN-FACT FOR THE
        MASTER SERVICER DEFENDANTS ...............................................................39

IX.     THE MASTER SERVICER DEFENDANTS RATIFIED CELINK'S
        UNLAWFUL ACTS ...........................................................................................41

X.      TOLLING ..........................................................................................................42

XI.     CAUSES OF ACTION .......................................................................................43

    FIRST CAUSE OF ACTION
    (BREACH OF CONTRACT) ....................................................................................43

    SECOND CAUSE OF ACTION
    (BREACH OF DUTIES AND COVENANTS OF GOOD FAITH AND FAIR DEALING) .................47

    THIRD CAUSE OF ACTION
    (VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349) ..................................49

    FOURTH CAUSE OF ACTION
    Violations of the California Consumer Legal Remedies Act...................................53

    FIFTH CAUSE OF ACTION
    Violations of the California Bus. & Prof. Code §§ 17200, *et seq.* .........................56

    SIXTH CAUSE OF ACTION
    Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ...................58

    SEVENTH CAUSE OF ACTION
    Violations of State Consumer Protection Laws in Addition to New York, California
    and Pennsylvania ....................................................................................................61

    EIGHTH CAUSE OF ACTION
    (UNJUST ENRICHMENT).......................................................................................65

    NINTH CAUSE OF ACTION
    (VIOLATIONS OF NEW YORK RPL §280-B) ..........................................................67

XII.    PRAYER FOR RELIEF.......................................................................................68

XIII.   DEMAND FOR JURY TRIAL .............................................................................69

## CLASS ACTION COMPLAINT

1.     Plaintiffs Molly-Jeanne Rizzati as Administrator for the Estate of Kristine Rizzati, Tamara Simpson as Personal Representative for the Estate of Judith Forseth, Ellisa Martin as Power of Attorney for Dathel Balch, Deloris Whitaker as Executor for the Estate of Rufus Whitaker and Michael Hawkins as Administrator for the Estate of Maria Graham (collectively, "Plaintiffs"), by and through their counsel, on behalf of themselves and all others similarly situated, allege based upon personal knowledge as to Plaintiffs' own acts and observations, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against defendants Compu-Link Corporation d/b/a Celink ("Celink"), Carrington Mortgage Services LLC ("Carrington") and Finance of America Reverse, LLC ("FAR") (collectively, "Defendants"), as follows:

## I.     NATURE OF THE ACTION

2.      This action arises out of injuries caused to borrowers of reverse mortgages and Home Equity Conversion Mortgages ("HECMs"), the federally insured version of so-called "reverse-mortgage" loans, due to systemic violations by Celink, Carrington and FA of mortgagor protections provided by standard HECM loan agreements and federal and state laws and regulations.

3.      Plaintiffs and the Classes seek reimbursement or credit reversal of four fees (collectively, the "Disputed Fees") that Celink, on behalf Carrington and FAR (collectively, the "Master Servicer Defendants"), unlawfully charge to Class members nationwide.  Those Disputed Fees are added by Celink to Class members' loans and represented in statements prepared by Celink as:

- Payment for Property Inspection (a/k/a Inspection Fees)
- Payment for Property Appraisal (a/k/a Appraisal Fees)
- Payment for Property Preservation (a/k/a Preservation Fees)
- Payment for Attorney Fees / Costs (a/k/a Attorneys' Fees and Costs)

4.      Celink, at the direction and approval of the Master Servicer Defendants, charges mortgagors' loans the Disputed Fees in conformity with Celink's companywide policies and/or practices

in a manner that breaches standardized HECM loan agreements and violates federal and state HECM mortgagor protection laws and regulations.

5.    Even when Celink and the Master Servicer Defendants are permitted , or required, to inspect, appraise and preserve properties, they are often not permitted to pass along the costs for those activities to mortgagors or their loans.  Celink does so anyway, with the approval and permission of the Master Servicer Defendants.

6.    Celink and the Master Servicer Defendants are each directly liable to Plaintiffs and the Classes defined herein for their own violations described in this Complaint.

7.    The Master Servicer Defendants are further liable as the assignee or successor of another Master Servicer who contracted with Celink for subservicing, and as having ratified Celink's unlawful acts.

8.    Celink is the agent of the Master Servicer Defendants, who are Celink's principals. The Master Servicer Defendants failed to adequately supervise, detect, prevent and correct Celink's misconduct and systemic violations.  The Master Servicer Defendants are jointly, severally and independently liable for Celink's servicing violations of Plaintiffs' and Class members' loans.

9.    The Master Servicer Defendants generally turn over nearly all servicing functions to Celink, content to merely collect the servicing revenue charged monthly to service HECM and other reverse mortgage loans.  In violation of their contractual, statutory and regulatory obligations as the lenders, mortgagees, issuers and master servicers, the Master Servicer Defendants turn a blind eye to Celink's systemic subservicing violations that breach standardized HECM loan agreements and violate federal and state HECM mortgagors protection statutes and regulations.

10.    Celink's and the Master Servicer Defendants' violations add the unlawful Disputed Fees to mortgagors' HECM and other reverse mortgage principal balances.  Plaintiffs' and Class members' damages increase further by:  (i) loan interest charged on the Disputed Fees; and (ii) mortgage insurance

premiums ("MIPs") charged to all HECM loans as a percentage of the principal balance. Pursuant to the terms of the Class members' loan agreements, interest accrues daily is added on a monthly basis, while MIP is permitted to be added to the principal balance on the later of the first day of the month or the day Celink or the Master Servicer pays the MIP to HUD. Defendants collect and profit, or eventually will collect and profit when the property securing the home is sold or the HECM or reverse mortgage is satisfied, from those unlawful and/or inflated Disputed Fees, additional interest and MIP charges to mortgagors' HECM and other reverse mortgage loans.

11.     Standardized HECM loan agreements mandated by HUD contractually obligate lenders, mortgagees, servicers and subservicers to comply with federal law and the state law where the properties are located. By adding the Disputed Fees, Celink and the Master Servicer Defendants breach those loan agreements, the duties of good faith and fair dealing, and engage in unfair and deceptive practices, by routinely violating the following federal and state laws and regulations:

(a).     24 C.F.R. §206.125(b) (Appraisal Fees);

(b).     24 C.F.R. §206.125(d) (Adopting State Laws);

(c).     24 C.F.R. §206.140 (Inspection and Property Preservation Fees);

(d).     24 C.F.R. §203.552 (HUD Fee Limitations);

(e).     24 C.F.R. §206.207 (HUD Fee Limitations);

(f).     HUD Mortgagee Letter 2016-03 and HUD Handbook 4000.1, Appx. 5 (Rev. 11/25/2025) (HUD Attorney Fee Limitations);

(g).     HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1(III)(B)(2)(c)(ii)(B) (Rev. 11/25/2025) (Notice Before Foreclosure Requirements);

(h).     New York Real Property Law ("RPL") §§ 280, 280-a, 280-b, 280-d (Reverse Mortgage Protection Laws);

(i).     3 N.Y.C.R.R. §79.7 (formerly 3 N.Y.C.R.R. §79.9) (Notice and Foreclosure Prevention Regulation);

(j).     California Civil Code §2954.5 (Notice Before Foreclosure Fees); and

(k).    State Laws Prohibiting Inspection Fees.

12.    Plaintiffs are Power of Attorney agents for current or former mortgagors, or the court-appointed Administrators for estates of mortgagors who had a HECM loan serviced by the Master Servicer Defendants and subserviced by Celink. Plaintiffs have been and continue to be injured by Celink's and the Master Servicer Defendants' unlawful acts in the amount of the Disputed Fees, and accrued interest and MIPs on those Disputed Fees.

13.    Plaintiffs and other Class members are injured as a direct and proximate cause of the unlawful acts of Celink and the Master Servicer Defendants, resulting in the Disputed Fees, interest and MIPs being added to mortgagors' HECM principal balances.

14.    Plaintiffs have each suffered injury and damages as a result of Defendants' unlawful imposition of the Disputed Fees. Plaintiff's Rizzati's mother suffered injury and damages exceeding $14,000 before interest and MIPs, Plaintiff Simpson's mother suffered injury and damages exceeding $8,800 before interest and MIPs; Dathel Balch suffered injury and damages exceeding $5,400 before interest and MIPs; Plaintiff Whitaker's father suffered injury and damages exceeding $3,200 before interest and MIPs; and Plaintiff Hawkins' mother suffered injury and damages exceeding $1,600 before interest and MIPs.

15.    Plaintiffs and Class members have either already paid the unlawfully added Disputed Fees, interest and MIPs, or will be required to do so when the HECM loans are satisfied upon sale of the homes or repayment or refinance of the HECM loans.

16.    On behalf of themselves and Classes of similarly situated HECM and reverse mortgage mortgagors, Plaintiffs plead the following claims:

(a)    Breaches of the standard HECM Loan Agreements (Count I);

(b)    Breach of Duties of Good Faith and Fair Dealing (Count II);

(c)    Violations of New York General Business Law ("GBL") §349 (Count III);

(d)    Violations of the California Consumer Legal Remedies Act, Cal. Bus. & Prof. Code §§ 1750, *et seq.* (the "CLRA") (Count IV);

(e)    Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count V);

(f)    Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.* (Count VI);

(g)    Violations of State consumer protection laws in addition to New York, California and Pennsylvania (Count VII);

(h)    Unjust enrichment (Count VIII); and

(i)    Violations of New York RPL §280-b (Count IX).

## II.    DECISION OF THE SECOND CIRCUIT IN RELATED ACTION

17.    A class action asserting similar claims as alleged by Plaintiffs in this action was filed putative class action styled *Shakespeare v. Live Well Financial, Inc., Compu-Link Corporation d/b/a Celink and Reverse Mortgage Funding, Inc.* (E.D.N.Y. Case No. 18-cv-7299) (the "*Shakespeare Action*").  In that case, Celink filed motions to dismiss the plaintiff's claims for violations of GBL §349 and unjust enrichment under FED. R. CIV. P. 12(b)(1) and (b)(6) and defendant Reverse Mortgage Funding, LLC ("RMF") filed a motion to dismiss under Rule 12(b)(6). The District Count denied Celink's Rule 12(b)(1) motion, but granted Celink's and RMF's Rule 12(b)(6) motions.  Plaintiff Shakespeare appealed those orders.

18.    On appeal, the Second Circuit vacated dismissal of Plaintiff Shakespeare's claims arising under GBL §349 against Celink, holding that Plaintiff Shakespeare's original *Class Action Complaint* had stated her claim under GBL §349.  *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474 (2d Cir. 2021).

19.    In reaching that decision, the Second Circuit held that the plaintiff had sufficiently pled consumer-oriented conduct to plead a GBL §349 claim.  *Id.* at 476 ("Shakespeare has also satisfied 'the threshold test in that the acts [she] complain[s] of are consumer-oriented in the sense that they potentially

8

affect similarly situated consumers.'") (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017)).

20.     The Second Circuit further held that Plaintiff had sufficiently pled Celink's deceptive practices to plead a GBL §349 claim. *Id.* ("[W]e conclude that the complaint raised sufficiently plausible claims under Section 349 to survive the motion to dismiss and proceed to summary judgment.").

21.     Explaining its reasoning, the Second Circuit held that the plaintiff can and did plead deceptive acts that violated GBL §349 by pleading Celink's violations of other federal and state consumer protection laws and regulations. *Id.* ("Third, the district court additionally erred in finding Shakespeare could not have plausibly stated a Section 349 claim by alleging materially deceptive violations of notice provisions and other regulations that do not independently provide private causes of action. 'New York courts have held that collecting fees in violation of other federal or state laws may satisfy the misleading element of §349.' *Cohen* [*v. JP Morgan Chase & Co.*], 498 F.3d [111,] 126 [(2d Cir. 2007)].'").

22.     The Second Circuit also vacated dismissal of Plaintiff Shakespeare's claims arising under common law unjust enrichment against Celink, holding that Plaintiff Shakespeare has stated her unjust enrichment claim. *Id.* ("We also vacate the dismissal of Shakespeare's unjust enrichment claim.").

23.     Upon remand, Plaintiff Shakespeare moved to amend her complaint, adding substantially similar breach of contract, breach of duties of good faith and fair dealing, GBL §349 and unjust enrichment claims against RMF and Celink that are pled in this action. RMF and Celink opposed the motion to amend claiming the futility of such claims. The Court denied that motion, finding each claim sufficiently pled and not futile. *See* Shakespeare Action, Dkt. 175 (Sept. 30, 2022).[1]

---

[1] Plaintiffs are each members of one or more classes pled in the *Shakespeare Action*. Celink's and RMF's opposed objections to Shakespeare Action, Dkt. 175 remaining pending.

### III.    JURISDICTION AND VENUE

24.    This Court possesses subject matter jurisdiction under 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000, there are in excess of 100 class members and members of the Class are citizens of a state different from that of Defendants.

25.    The Court has supplemental jurisdiction over Plaintiffs' and the Classes' state and common law claims pursuant to 28 U.S.C. §1367.

26.    This Court has personal jurisdiction over all Defendants.    Defendants are each authorized to do business in New York, maintain or maintained continuous and systemic contacts with New York and this District, do or did business in New York specifically related to the claims alleged in this Compliant, and have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

27.    Venue is proper in this District under 28 U.S.C. §1391.

### IV.    THE PARTIES

28.    Plaintiff Molly-Jeanne Rizzati as Administrator for the Estate of Kristine Rizzati was appointed by the New York Surrogate's Court as the Administrator for the estate of Kristine Rizzati, her mother.    Prior to her death, Kristine Rizzati was the co-mortgagor with her mother Vivian Miller (who pre-deceased Kristine Rizzalti leaving Kristine Rizzati as the sole mortgagor and Remainderman) of a HECM and reverse mortgage obtained in 2018 and secured by a home located in Merrick, New York.    At all relevant times continuing through the sale of the home that secured Kristine Rizzati's HECM loan, Celink was the subservicer of Kristine Rizzati's HECM and added all unlawful Disputed Fees and resulting interest and MIPs to Kristine Rizzati's HECM loan.    Prior the satisfaction of Kristine Rizzati's HECM, the master servicers of her HECM, and Celink's principals, were Intercontinental Capital

10

Group who sold and assigned the servicing rights to FAR in February 2022. The Disputed Fees, known at this time, that Celink charged to Kristine Rizzati's HECM loan, each of which was subject to compound interest and MIPs comprise:

| Date | Disputed Fee Description | Amount |
|---|---|---|
| 4/7/2022 | Attorney Fees/Costs | $410.00 |
| 5/3/2022 | Attorney Fees/Costs | $2,261.06 |
| 6/14/2022 | Attorney Fees/Costs | $50.00 |
| 7/14/2022 | Attorney Fees/Costs | $165.88 |
| 8/4/2022 | Attorney Fees/Costs | $75.00 |
| 8/5/2022 | Attorney Fees/Costs | $100.00 |
| 8/25/2022 | Attorney Fees/Costs | $1,897.28 |
| 3/3/2023 | Attorney Fees/Costs | $1,065.00 |
| 4/26/2023 | Attorney Fees/Costs | $125.00 |
| 12/1/2023 | Attorney Fees/Costs | $743.31 |
| 2/1/2024 | Attorney Fees/Costs | $522.31 |
| 3/11/2024 | Attorney Fees/Costs | $6,047.48 |
| 4/22/2025 | Attorney Fees/Costs | $565.00 |
| | **Total:** | **$14,027.32** |

29.    Tamara Simpson, who was appointed by the Wisconsin and Florida courts as the Personal Representative for the Estate of Judith Forseth, her mother, resides in Spring Green, Wisconsin. In 2007, Judith Forseth, obtained a HECM secured by her home in Fort Meyers, Florida. At all relevant times continuing through the sale of Ms. Forseth's home that secured her HECM loan, Celink was the subservicer of Ms. Forseth's HECM and added all unlawful Disputed Fees and resulting interest and MIPs to Ms. Forseth's HECM loan. Prior the satisfaction of Ms. Forseth's HECM, the master servicers of her HECM, and Celink's principals, were James B. Nutter & Company who sold and assigned the servicing rights to RMF in 2017 who sold and assigned the servicing rights to Carrington in 2023. The Disputed Fees, known at this time, that Celink charged to Judith Forseth's HECM loan, each of which was subject to compound interest and MIPs comprise:

| Date | Disputed Fee Description | Amount |
|---|---|---|
| 12/17/2020 | Payment for Property Inspection | $20.00 |
| 2/4/2021 | Payment for Property Inspection | $20.00 |
| 2/11/2021 | Payment for Property Inspection | $10.00 |
| 2/25/2021 | Payment for Property Inspection | $20.00 |
| 3/26/2021 | Payment for Property Appraisal | $393.00 |
| 3/29/2021 | Payment for Property Inspection | $20.00 |
| 4/23/2021 | Payment for Property Inspection | $20.00 |
| 9/16/2022 | Payment for Property Inspection | $20.00 |
| 9/16/2022 | Payment for Property Appraisal | $475.00 |
| 1/5/2023 | Payment for Property Inspection | $20.00 |
| 1/25/2023 | Payment for Property Appraisal | $475.00 |
| 2/24/2023 | Payment for Property Inspection | $20.00 |
| 3/22/2023 | Payment for Property Inspection | $20.00 |
| 4/19/2023 | Attorney Fees/Costs | $290.00 |
| 4/26/2023 | Attorney Fees/Costs | $475.00 |
| 4/26/2023 | Attorney Fees/Costs | $1,425.00 |
| 4/26/2023 | Payment for Property Inspection | $20.00 |
| 5/23/2023 | Attorney Fees/Costs | $2,010.88 |
| 5/24/2023 | Payment for Property Inspection | $20.00 |
| 5/24/2023 | Payment for Property Preservation | $55.00 |
| 5/24/2023 | Payment for Property Preservation | $150.00 |
| 6/22/2023 | Payment for Property Inspection | $20.00 |
| 6/28/2023 | Attorney Fees/Costs | $840.00 |
| 7/18/2023 | Attorney Fees/Costs | $45.00 |
| 7/18/2023 | Attorney Fees/Costs | $210.00 |
| 7/25/2023 | Payment for Property Inspection | $20.00 |
| 8/15/2023 | Payment for Property Inspection | $20.00 |
| 9/7/2023 | Attorney Fees/Costs | $600.00 |
| 9/7/2023 | Attorney Fees/Costs | $300.00 |
| 9/28/2023 | Attorney Fees/Costs | $750.00 |
| 1/3/2024 | Payment for Property Preservation | $30.00 |
| 1/30/2024 | Payment for Property Inspection | $20.00 |
| | **Total:** | **$8,833.88** |

30.     Plaintiff Ellisa Martin as Power of Attorney for her mother Dathel Balch, and Dathel

Balch, reside in Clewiston, Florida.  In 2008, Dathel Balch and her husband Robert Balch obtained a

HECM. At all relevant times Celink was the subservicer of Dathel Balch's HECM and added all unlawful Disputed Fees and resulting interest and MIPs to Dathel Balch's HECM loan. The master servicers of Dathel Blach's HECM, and Celink's principals, were James B. Nutter & Company who sold and assigned the servicing rights to RMF in 2018 who sold and assigned the servicing rights to Fannie Mae in 2024. The Disputed Fees, known at this time, that Celink and RMF charged to Dathel Balch's HECM loan, each of which was subject to compound interest and MIPs comprise:

| Date | Disputed Fee Description | Amount |
|------|--------------------------|--------|
| 10/1/2021 | Payment for Property Inspection | $20.00 |
| 10/25/2021 | Payment for Property Inspection | $20.00 |
| 11/22/2021 | Payment for Property Inspection | $20.00 |
| 12/28/2021 | Payment for Attorney Fees/Costs | 840.00 |
| 12/28/2021 | Payment for Property Inspection | $20.00 |
| 2/9/2022 | Payment for Attorney Fees/Costs | $2,380.00 |
| 2/9/2022 | Payment for Attorney Fees/Costs | $1,145.00 |
| 2/16/2022 | Payment for Attorney Fees/Costs | $440.00 |
| 12/6/2022 | Payment for Property Inspection | $20.00 |
| 1/17/2023 | Payment for Property Appraisal | $572.00 |
| | **Total:** | $5,477.00 |

31.    Plaintiff Whitaker, appointed by the Superior Court of California as the Executor for the Estate of Rufus Whitaker, her father, resides in San Diego, California. In 2017, Rufus Whitaker and his wife who pre-deceased him, obtained a HECM and reverse mortgage secured by their home in San Diego, California. At all relevant times continuing through the sale of Mr. Whitaker's home that secured his HECM loan in December 2024, Celink was the subservicer of Mr. Whitaker's HECM and added all unlawful Disputed Fees and resulting interest and MIPs to Mr. Whitaker's HECM loan. Prior the satisfaction of Mr. Whitaker's HECM, the master servicers of Mr. Whitaker's HECM, and Celink's principals, were Synergy One Lending d/b/a Retirement Funding Solutions who sold and assigned

the servicing rights to American Advisors Group (sold to and acquired by FAR) who sold and assigned

the servicing rights to RMF who sold and assigned the servicing rights to Carrington. The Disputed

Fees, known at this time, that Celink, RMF and Carrington charged to Rufus Whitaker's HECM loan,

each of which was subject to compound interest and MIPs comprise:

| Date | Disputed Fee Description | Amount |
|---|---|---|
| 11/2/20 | Payment for Property Appraisal | $450.00 |
| 11/12/22 | Payment for Property Inspection | $20.00 |
| 12/18/23 | Payment for Property Inspection | $30.00 |
| 12/26/23 | Payment for Property Appraisal | $420.00 |
| 1/16/24 | Payment for Property Inspection | $30.00 |
| 2/5/24 | Payment for Property Inspection | $30.00 |
| 2/20/24 | Payment for Attorney Fees/Costs | $570.00 |
| 2/27/24 | Payment for Property Inspection | $30.00 |
| 3/1/24 | Payment for Attorney Fees/Costs | $675.00 |
| 3/18/24 | Payment for Attorney Fees/Costs | $98.00 |
| 3/25/24 | Payment for Attorney Fees/Costs | $584.98 |
| 3/25/24 | Payment for Property Preservation | $211.00 |
| 4/1/24 | Payment for Property Inspection | $30.00 |
| 5/10/24 | Payment for Property Inspection | $30.00 |
| 6/24/24 | Payment for Property Inspection | $30.00 |
| 7/1/24 | Payment for Property Inspection | $30.00 |
| 7/29/24 | Payment for Property Inspection | $30.00 |
| 8/28/24 | Payment for Property Inspection | $30.00 |
| | **Total:** | **$3,328.98** |

32.     Plaintiff Hawkins, appointed by the Register for the Probate of Wills for Philadelphia,

Pennsylvania as Administrator for the Estate of Maria Graham, his mother, resides in Philadelphia,

Pennsylvania. In 2008, Maria Graham obtained a HECM and reverse mortgage secured by her home

in Philadelphia, Pennsylvania. At all relevant times, Celink was the servicer or subservicer of Ms.

Graham's HECM and added all unlawful Disputed Fees and resulting interest and MIPs to Ms.

Graham's HECM loan. The master servicers of Ms. Graham's HECM, were James B. Nutter &

14

Company who sold and assigned the servicing rights to RMF who sold and assigned the servicing rights to Celink. Prior to becoming the master servicer, Celink subserviced the loan for RMF. The Disputed Fees, known at this time, that Celink and RMF charged to Ms. Graham's HECM loan, each of which was subject to compound interest and MIPs comprise Appraisal Fees totaling at least $393.00, Property Inspection Fees totaling at least $950.00 and Property Preservation Fees totaling at least $320.00. Upon information and belief, Celink has also added Attorney Fees/Costs to Ms. Graham's HECM.

33.     Defendant Celink is a Michigan corporation with its principal place of business in Lansing, Michigan, and is registered with the New York Secretary of State to do business in New York. Celink claims on its website to be the largest subservicer of reverse mortgages in the United States, and its clients include regional to nationwide lenders, banks, and insurance companies. Celink claims to have developed and uses a proprietary Java-based reverse mortgage servicing platform, ReverseServ™ and ReverseServ Elite™, for servicing FHA HECM loans. According to its website, "Our loan portfolio is currently valued at over $55B and our clients are the largest and most reputable originators of the HECM loan product." Celink claimed on its website to be "licensed to service reverse mortgages in all 50 states, including [Puerto Rico] and the U.S. [Virgin Islands]," but surrendered its Mortgage Loan Servicer certificate in New York effective July 1, 2020. Celink is a subsidiary of Peer Advisors LLC.

34.     Carrington is a Delaware limited liability company with its principal place of business in California and is registered with the New York Secretary of State to do business in New York. Carrington is a lender, mortgagee, holder, issuer and servicer of HECM loans in New York and throughout the United States. Carrington is registered in the State of New York as a Mortgage Banker and Exempt Mortgage Servicer. Carrington was the Master Servicer of Plaintiff Simpson's mother's and Plaintiff Whitaker's father's HECM loans, having acquired those servicing rights from RMF. Carrington retained Celink as its agent to subservice the loans for which it is the master servicer.

Carrington is liable for the unlawful acts alleged in this Complaint based upon (i) its directly unlawful conduct as lender, mortgagee, holder, issuer and servicer of HECM and reverse mortgage loans; (ii) as having knowingly ratified Celink's unlawful acts; (iii) as the principal of Celink who has engaged in the unlawful acts alleged in this Complaint; and (iv) as the successor and assignee of loans and servicing rights purchased, acquired or previously serviced by other master servicers, including RMF.    Carrington is a subsidiary of Carrington Holding Company, LLC.

35.    FAR is a Delaware limited liability company with its principal place of business in Oklahoma, and is registered with the New York Secretary of State to do business in New York.  FAR is a lender, mortgagee, holder, issuer and servicer of HECM loans in New York and throughout the United States.  FAR is registered in the State of New York as a foreign limited liability company and licensed as a Mortgage Banker.  FAR was the Master Servicer of Plaintiff Rizzati's mother's HECM loan.  FAR retained Celink as its agent to subservice the loans for which it is the master servicer.  FAR is liable for the unlawful acts alleged in this Complaint based upon (i) its directly unlawful conduct as lender, mortgagee, holder, issuer and servicer of HECM and reverse mortgage loans; (ii) as having knowingly ratified Celink's unlawful acts; (iii) as the principal of Celink who has engaged in the unlawful acts alleged in this Complaint; and (iv) as the successor and assignee of loans and servicing rights purchased, acquired or previously serviced by other master servicers, including RMF.    In 2023, FAR acquired American Advisors Group (AAG). FAR is a subsidiary of Finance of America Companies Inc. (NYSE:  FOA).

## V.    REVERSE MORTGAGE LOANS AND FEDERALLY INSURED HOME EQUITY CONVERSION MORTGAGES (HECMs)

36.    A reverse mortgage loan is a home loan that requires no monthly mortgage payments.

37.    Home Equity Conversion Mortgages (HECMs) are a specific type of reverse mortgage loan authorized by Congress under the National Housing Act, pursuant to the Housing and Community Development Act of 1987.  The HECM insurance program is administered and regulated by the United States Department of Housing and Urban Development ("HUD"), through the Federal

16

Housing Administration. Congress created the HECM federal-insurance program to ensure that elderly homeowners would be able to access the financial resources stored in their home's equity without having to sell the home. The HECM insurance program was authorized to insure HECM lenders against the risk that the principal balance could exceed the property value upon the death of the last surviving mortgagor. It further requires that insured lenders satisfy all federal and state law requirements to protect the mortgagors from certain unfair, deceptive, or predatory lending practices.

38.     HECM loans were developed and authorized by Congress to enable seniors to convert the equity in their homes to cash to help them meet their monthly expenses and protect them from losing their homes. According to a website that was maintained by HUD, "The Home Equity Conversion Mortgage (HECM) is Federal Housing Administration's (FHA) reverse mortgage program which enables you to withdraw some of the equity in your home. You choose how you want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both." Source: https://www.benefits.gov/benefits/benefit-details/709.

39.     According to the United States Government Accountability Office ("GAO"), "While HECMs have the potential to play a key role in meeting the needs of seniors facing financial hardship or seeking to improve their quality of life, the product is relatively complex and costly and the population it serves is vulnerable." GAO, Testimony Before the U.S. Senate, Special Committee on Aging, *Reverse Mortgages[,] Product Complexity and Consumer Protection Issues Underscore Need for Improved* **Controls over Counseling for Borrowers** (June 29, 2009) (Statement of Matthew J. Scire, Director of Financial Markets and Community Investment).

40.     The HECM loan agreements between a HECM lender / mortgagee and a borrower / mortgagor generally consists of a standardized note, a standardized reverse mortgage or deed of trust, a standardized second reverse mortgage (naming HUD as the mortgagee) and a standardized conversion loan agreement, each of which have standard terms that lenders are required by HUD to use. Those

"model" agreements are available on the HUD website. *See* https://www.hud.gov/program_offices/housing/sfh/model_documents. The HECM loan agreements must conform to and comply with the National Housing Act and federal regulations promulgated by HUD and FHA, and the state laws in which the properties are located.

41.     Lenders, mortgagees, master servicers, and subservicers of HECM loans are subject to the obligations set forth in 24 C.F.R. Parts 203 and 206, HUD Mortgagee Letters, and HUD Handbook 4000.1. *See* 24 C.F.R. §206.115(f).

42.     Many HECM loans are securitized and sold to investors pursuant to the Government National Mortgage Association ("Ginnie Mae") Mortgage-Backed Securities ("MBS") Program for HECM loans.

43.     Under the Ginnie Mae HECM Mortgage-Backed Securities ("HMBS") Program, master servicers can pool and securitize multiple HECM loans into "participations" sold to investors. *See* HUD Handbook 5500.3 Rev. 1, Chpt. 35-1.   The sponsoring HECM lender is the Issuer of the pool and generally remains the master servicer and legal (but not beneficial) owner of the securitized pool of HECM loans, for which it is paid a servicing fee.

44.     A Ginnie Mae Issuer of MBS securities is subject to obligations set forth in the Ginnie Mae Mortgage-Backed Securities Guide, HUD Handbook 5500.3, Rev. 1. *See* 24 C.F.R. §320.1 ("All such [modified pass-through securities] transactions are governed by the specific terms and provisions of the Association's Mortgage-Backed Securities Guides (MBS Guides) and contracts entered into by the parties.").

45.     Issuers must comply with both Ginnie Mae and HUD requirements, including those rules concerning the obligations of issuers, successors, and transferees. *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4.  Issuers must also comply with rules concerning subservicers.  For instance, they can only contract with a Ginnie Mae-approved subcontractor.  *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4, 4-3. They can also

subcontract, some, but not all, of their servicing functions. *See Id.* at 4-1, 4-3. The master servicer will remain responsible for the performance of any servicing functions that it delegates to its subservicer. *Id.* at 4-2(B).

46.      Regardless of whether the servicing functions are delegated to a subservicer, the master servicer of a loan securitized under the Ginnie Mae MBS Program remains fully responsible for all servicing obligations. *See* 24 C.F.R. 206.101(4)(iv) ("The responsibility for servicing the insured mortgages shall remain with the principal mortgagee."); Ginnie Mae MBS Guide, Handbook 5500.3, Rev. 1, Ch. 4, §4-1 ("The Issuer is fully responsible for the administration of the securities and the servicing of the pooled mortgages.").

## VI.      STATEMENT OF FACTS

### A.      VIOLATIONS OF FEDERAL LAWS AND REGULATIONS

47.      The standardized HUD-mandated HECM loan agreements and HUD regulations mandate that lenders, mortgagees, servicers and subservicers comply with federal law and the law in the State where the property is located.

48.      Plaintiffs' standardized HECM mortgage agreements (the "*Mortgage Agreements*") require compliance with federal and state laws regulating HECMs:

> **Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Forseth *Home Equity Conversion Mortgage*, §17; Balch *Home Equity Conversion Mortgage*, §17 (same); Whitaker *Adjustable Rate Home Equity Conversion Deed of Trust,* §19 (same); Rizzati *Adjustable Rate Home Equity Conversion Mortgage,* §19 (same); Graham *Open-End Mortgage (Home Equity Conversion)*, §17 (same).  The same contractual obligation to comply with "Federal law and the law of the jurisdiction in which the Property is located" is contained

in the standardized *Home Equity Conversion Loan Agreement* (the "*Conversion Loan Agreements*"). *See* Balch *Home Equity Conversion Mortgage Loan Agreement*, §6.4.

49.     The standardized HECM loan agreements also require compliance with HUD regulations. As provided in the *Mortgage Agreements*: "Fees. Lender may collect fees and charges authorized by the Secretary." Forseth *Home Equity Conversion Mortgage*, §8; Balch *Home Equity Conversion Mortgage*, §8; Whitaker *Adjustable Rate Home Equity Conversion Deed of Trust*, §8; Rizzati *Adjustable Rate Home Equity C*onversion *Mortgage*, §8, Graham *Open-End Mortgage (Home Equity Conversion)*, §8.

50.     In addition, the standard HECM Notes provide that "costs and expenses, including reasonable and customary attorney's fees" must "not be prohibited by applicable law." Forseth *Adjustable-Rate Note,* §7(C); Balch *Adjustable-Rate Note,* §7(C); Whitaker *Adjustable-Rate Note (Home Equity Conversion),* §7(D); Miller *Adjustable-Rate Note,* §7(D), Graham *Adjustable-Rate Note*, §7(C).

51.     And, the *Conversion Loan Agreements* limit "charges or fees" to those "permitted under 24 C.F.R. 206.207(a)." Mayweathers *Home Equity Conversion Loan Agreement Closed End,* §2.4; Balch *Home Equity Conversion Loan Agreement,* §2.4.

**Imposition of the Unlawful Disputed Fees**

52.     Celink and the Master Servicer Defendants breached Plaintiffs' and Class members' loan agreements, the duties of good faith and fair dealing, and engaged in unfair and deceptive practices whenever the Disputed Fees violated the provisions of the HUD-standardized loan agreements and/or: (i) 24 C.F.R. §206.125(b); (ii) 24 C.F.R. §206.125(d); (iii) 24 C.F.R. §206.140; (iv) 24 C.F.R. §203.552; (v) 24 C.F.R. §206.207; (vi) HUD Mortgagee Letters and Handbooks; and (vii) state laws and regulations.

**(i).     Violations of 24 C.F.R. §206.125(b)**

53.     Celink and the Master Servicer Defendants breached Plaintiffs' and Class members' loan agreements, the duties of good faith and fair dealing, and engaged in deceptive practices due to their violations of 24 C.F.R. §206.125(b), which states: "If the mortgage is due and payable, *the appraisal*

*shall be at the mortgagee's expense* but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the mortgagor or other permissible party." (Emphasis added).

54.     Celink and the Master Servicer Defendants violated 24 C.F.R. §206.125(b) by adding appraisal fees to loans after they were declared due and payable, but before any sale of the property.

55.     Celink and RMF declared Plaintiff Simpson's mother's HECM loan due and payable. Afterwards and in violation of 24 C.F.R. §206.125(b), and therefore in breach of her HECM loan agreements, Celink and RMF added an appraisal fee of $393 to Plaintiff Simpson's mother's principal balance on March 26, 2021 and another in the amount of $475 on September 16, 2022, both prior to any sale of the property.  In every monthly statement thereafter continuing to until the sale of the property, Celink, RMF and Carrington deceptively and in breach of contract stated the amount of Plaintiff Simpson's mother's HECM balance as including the unlawful appraisal fees, plus additional interest and MIPs based upon those fees.

56.     Celink and RMF declared Dathel Balch's HECM loan due and payable.  Afterwards and in violation of 24 C.F.R. §206.125(b), and therefore in breach of her HECM loan agreements, Celink and RMF added an appraisal fee of $572 to Dathel Balch's principal balance on January 17, 2023, prior to any sale of the property.  In every monthly statement thereafter continuing to the present, Celink and RMF deceptively and in breach of contract stated the amount of Dathel Balch's HECM balance as including the unlawful appraisal fee, plus additional interest and MIPs based upon that fee.

57.     Celink and RMF declared Plaintiff Whitaker's father's HECM loan due and payable. Afterwards and in violation of 24 C.F.R. §206.125(b), and therefore in breach of his HECM loan agreements, Celink and RMF added an appraisal fee of $450 to Plaintiff Whitaker's father's principal balance on November 2, 2020, and another in the amount of $420 on December 26, 2023, both prior to any sale of the property.  In every monthly statement thereafter continuing until the sale of the property, Celink, RMF and Carrington unfairly and deceptively and in breach of contract stated the

amount of Plaintiff Whitaker's father's HECM balance as including the unlawful appraisal fees, plus additional interest and MIPs based upon those fees.

58.    Celink declared Plaintiff Hawkins' mother's HECM loan due and payable. Afterwards and in violation of 24 C.F.R. §206.125(b), and therefore in breach of her HECM loan agreements, Celink added appraisal fees to Plaintiff Hawkins' mother's principal balance.  In every monthly statement thereafter, Celink, unfairly and deceptively and in breach of contract stated the amount of Plaintiff Hawkins' mother's HECM balance as including the unlawful appraisal fees, plus additional interest and MIPs based upon those fees.

59.    Adding appraisal fees to principal balances after declaring a HECM or reverse mortgage loan due and payable but before sale of the property not only violates 24 C.F.R. §206.125(b), but is also a breach of Plaintiffs' and Class members' *Mortgage Agreements* (Sections entitled "Charges to Borrower and Protection of Lender's Rights in the Property," and "Fees"). Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

60.    Adding interest and MIPs in violation of 24 C.F.R. §206.125(b) breaches Plaintiffs' and Class members' *Conversion Loan Agreements* (Sections entitled "Interest" and "Mortgage Insurance Premium (MIP); Monthly Charge").  Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

**(ii).    Violations of 24 C.F.R. §206.125(d)**

61.    Celink and the Master Servicer Defendants breached Plaintiffs' and Class members' loan agreements, the duties of good faith and fair dealing, and engaged in unfair and deceptive practices due to their violations of 24 C.F.R §206.125(d), which prohibits the filing of any state foreclosure lawsuit *until after* the mortgagee, servicer and servicing agent comply with all State law requirements for filing a foreclosure lawsuit.

22

62.    The foreclosure lawsuit filed against Plaintiff Rizzati failed to comply with state laws and regulations for the reasons pled in 98-106 below, and therefore violated 24 C.F.R §206.125(d).

63.    Celink, RMF and Longbridge further violated 24 C.F.R. §206.125(d) by failing to comply with the notice requirements in HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1 (III)(B)(2)(c)(ii)(B). That Mortgagee Letter and the HUD Handbook require the HECM servicer to send a Property Charge Delinquency Letter giving the mortgagor 30 days to provide evidence of satisfaction before the loan is considered in default and prior to the mortgagee advancing corporate funds to pay any property charges. *See* 24 C.F.R. §203.331.  The Delinquency Letter must advise the mortgagor that housing counseling is available and disclose any available loss mitigation options before seeking HUD approval to call the loan due and payable or begin the process of filing a foreclosure lawsuit. Celink and the Master Servicer Defendants did not provide the required notices.  Defendants nevertheless purported to call Plaintiffs' and Class members' loans due and payable, filed foreclosure lawsuits without complying with the pre-filing foreclosure requirements, and charged Plaintiffs and Class members various Disputed Fees related to foreclosure lawsuits filed in violation of HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1 (III)(B)(2)(c)(ii)(B).

64.    Adding Disputed Fees to HECM or reverse mortgage principal balances related to a foreclosure lawsuit when Celink and the Master Servicer Defendants did not comply with the notice required by HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1 (III)(B)(2)(c)(ii)(B) or state laws not only violates 24 C.F.R. §206.125(d), but is a breach of Plaintiffs' and Class members' *Mortgage Agreements* (Sections entitled "Charges to Borrower and Protection of Lender's Rights in the Property," "Inspection," "Fees" and "Grounds for Acceleration of Debt … Notice to Secretary and Borrower"), *Conversion Loan Agreements* (Section entitled "Protection of Property") and *Notes* (Subsection entitled "Payment of Costs and Expenses"). Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

23

65.     Adding interest and MIPs in violation of 24 C.F.R. §206.125(d) also breaches Plaintiffs' and Class members' *Conversion Loan Agreements* (Sections entitled "Interest" and "Mortgage Insurance Premium (MIP); Monthly Charge").  Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

**(iii).    Violations of 24 C.F.R. §206.140**

66.     Neither an inspection fee nor a property preservation fee may be charged to the mortgagor's HECM unless and until the mortgagee learns that the property is "vacant or abandoned." 24 C.F.R. §206.140.

67.     Celink and the Master Servicer Defendants violated 24 C.F.R. 24 C.F.R. §206.140 by adding inspection fees and property preservation fees to loans secured by properties that were not vacant or abandoned.

68.     Celink and the Master Servicer Defendants further violate 24 C.F.R. §206.140 by adding inspection fees more frequently than permitted by 24 C.F.R. §206.140, including multiple times in the same month, as they did for Plaintiff Simpson's mother and Dathel Balch's loans.

69.     Celink, RMF and Carrington charged Plaintiff Simpson's mother at least seventeen inspection fees and three property preservation fees even though Ms. Forseth continually occupied her home.  In every monthly statement thereafter continuing until the property was sold, Celink, RMF and Carrington deceptively and in breach of contract stated the amount of Plaintiff Simpon's mother's HECM balance as including the unlawful inspection and property preservation fees, plus additional interest and MIPs based upon those fees.

70.     Celink and RMF charged Dathel Balch at least five inspection fees even though she continually occupied her home.  In every monthly statement thereafter continuing to the present, Celink and RMF deceptively and in breach of contract stating the amount of Dathel Balch's HECM

balance as including the unlawful inspection fees, plus additional interest and MIPs based upon those fees.

71.    Celink, RMF and Carrington charged Plaintiff Whitaker's father at least eleven inspection fees and one property preservation fee even though Plaintiff Whitaker and her father continually occupied the home.  In every monthly statement thereafter continuing until the sale of the property, Celink, RMF and Carrington unfairly, deceptively and in breach of contract stated the amount of Plaintiff Whitaker's father's HECM balance as including the unlawful inspection and property preservation fees, plus additional interest and MIPs based upon those fees.

72.    Celink charged Plaintiff Hawkins' mother inspection fees and property preservation fees even though Ms. Graham and/or her children continually occupied her home.  In every monthly statement thereafter continuing until the property was sold, Celink deceptively and in breach of contract stated the amount of Plaintiff Hawkins' mother's HECM balance as including the unlawful inspection and property preservation fees, plus additional interest and MIPs based upon those fees.

73.    Celink and the Master Servicer Defendants further violated 24 C.F.R. §206.140 by adding inspection fees more frequently than permitted by 24 C.F.R. §206.140, including multiple times in the same month, as was imposed on Plaintiff Simpson's mother, Plaintiff Whitaker's father and Dathel Balch.

74.    Adding inspection fees or property preservation fees to HECM or reverse mortgage principal balances when properties were not vacate or abandoned, or charging the fees more frequently than permitted, is also a breach of Plaintiffs' and Class members' *Mortgage Agreements* (Sections entitled "Charges to Borrower and Protection of Lender's Rights in the Property," "Inspection," and "Fees") and *Conversion Loan Agreements* (Section entitled "Protection of Property").  Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated

75. Adding interest and MIPs in violation of 24 C.F.R. §206.140 breaches Plaintiffs' and Class members' *Conversion Loan Agreements* (Sections entitled "Interest" and "Mortgage Insurance Premium (MIP); Monthly Charge"). Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

**(iv). Violations of 24 C.F.R. §203.552**

76. Celink and the Master Servicer Defendants breached Plaintiffs' and Class members' standardized loan agreements, the duties of good faith and fair dealing, and engaged in deceptive practices due to their violations of HUD regulation 24 C.F.R. §203.552, which prohibits charging mortgagors any fee not authorized by HUD. Plaintiffs' and Class members' loan agreements expressly prohibit fees not authorized by HUD or above the amounts permitted by HUD, and as a result any Dispute Fee that violates 24 C.F.R. §203.552 breaches Plaintiffs' and Class Members' loan agreements.

77. 24 C.F.R. §203.552 specifically prohibits any "[a]ttorney's and trustee's fees and expenses" that are not "actually incurred" and "[c]harges for servicing activities of the mortgagee or servicer;" 24 C.F.R.§§ 203.552(a)(9), (a)(12)(i), (a)(13).

78. Further, §203.552(b) requires any fee imposed by the loan servicer or its agent to "be predicated upon *the actual cost of the work performed* including out of pocket expenses." (emphasis added).

79. Celink and the Master Servicer Defendants violated 24 C.F.R. §203.552 by charging any and all of the Disputed Fees not permitted by HUD regulations, Mortgagee Letters, HUD Handbooks or loan agreements, including HUD regulations adopting state law.

80. Celink and the Master Servicer Defendants further violated 24 C.F.R. §203.552, and therefore breached Plaintiffs' and Class members' standardized loan agreements by charging the Disputed Fees in excess of amounts permitted by HUD.

81.     HUD sets and publishes limits on the amounts of servicing fees that can be charged by HECM loan servicers.  *See e.g.,* HUD Mortgagee Letter 2016-03 ("The amount claimed for attorney fees cannot exceed the fees charged for work actually performed.  Additionally, the amount charged to the mortgagor may not exceed the schedule of attorney's fees established by HUD as reasonable and customary for claim purposes.").  The allowable limits on attorney fees are contained in the HUD Handbook 4000.1, Appendix 5 (*HUD Schedule of Standard Possessory Action and Deed-In-Lieu of Foreclosure Attorney Fees (Applies to Servicing Only)*).

82.     Celink and the Master Servicer Defendants routinely charged Plaintiffs and Class members Attorney Fees above the HUD limits.

83.     The HUD Handbook 4000.1, Appx. 5 limits the amount of attorneys' fees that can be charged to a mortgagor residing in New York for a foreclosure to $725.00.  Celink, RMF and FAR violated those limits by charging Plaintiff Rizzati's mother's HECM Attorney's Fees and Costs totaling at least $14,027.32.

84.     The HUD Handbook 4000.1, Appx. 5 limits the amount of attorneys' fees that can be charged to a mortgagor residing in Florida for a foreclosure to $400.00.  Celink, RMF and Carrington violated those limits by charging Plaintiff Simpson's mother's HECM Attorney's Fees and Costs totaling at least $6,945.88.

85.     The HUD Handbook 4000.1, Appx. 5 limits the amount of attorneys' fees that can be charged to a mortgagor residing in Florida for a foreclosure to $400.00.  Celink and RMF violated those limits by charging Dathel Balch's HECM Attorney's Fees and Costs totaling at least $4,805.

86.     The HUD Handbook 4000.1, Appx. 5 limits the amount of attorneys' fees that can be charged to a mortgagor residing in California for a foreclosure to $550.00.  Celink, RMF and Carrington violated those limits by charging Plaintiffs' Whitker's father's HECM Attorney's Fees and Costs totaling at least $1,927.98.

87.     Charging Disputed Fees not permitted by 24 C.F.R. §203.552, or in amounts that exceed HUD limits, constitutes a breach of Plaintiffs' and Class members' *Mortgage Agreements* (Sections entitled "Charges to Borrower and Protection of Lender's Rights in the Property," and "Fees"), *Conversion Loan Agreements* (Section entitled "Protection of Property") and *Notes* (Section entitled "Payment of Costs and Expenses."). Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

88.     Adding interest and MIPs in violation of 24 C.F.R. §203.552 breaches Plaintiffs' and Class members' *Conversion Loan Agreements* (Sections entitled "Interest" and "Mortgage Insurance Premium (MIP); Monthly Charge"). Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

**(v).    Violations of 24 C.F.R. §206.207**

89.     Celink and the Master Servicer Defendants breached Plaintiffs' and Class members' loan agreements, the duties of good faith and fair dealing, and engaged in deceptive practices due to their violations of 24 C.F.R. §206.207, which prohibits the "charges and fees" not listed in 24 C.F.R. §206.207 being added to HECM loans

90.      Celink and the Master Servicer Defendants charged Attorney Fees and Costs and Appraisal Fees in violation of 24 C.F.R. §206.207(a)(1)(ii). Those fees and charges are unlawful when imposed above actual cost and/or in connection with foreclosure lawsuits filed before and without providing the pre-foreclosure notices required by HUD or state laws and regulations, including those pled in this Complaint.

91.     Among those notice requirements are those provided in New York RPL §§ 280, 280-a, 280-d(4), HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1(III)(B)(2)(c)(ii)(B). That Mortgage Letter and Handbook requires: "For HECM loans that are in default due to unpaid property charges, mortgagees shall provide a Property Charge Delinquency Letter to the mortgagor as soon as

28

the mortgagee receives notice of a missed payment for property charges" and "[p]rovide notice of any available loss mitigation options the mortgagee may offer," among other specified requirements, before paying the taxes on behalf of the mortgagor that forced them into default, before calling the loan due and payable and before filing any foreclosure lawsuit.

92.     Upon information and belief, Celink and FAR also did not provide the pre-foreclosure notices required by New York RPL §§ 280, 280-a and 280-d(4).  Celink and FAR nevertheless charged their HECM loan Attorney's Fees and Costs violation of 24 C.F.R. §206.207(a)(1)(ii).  In every monthly statement thereafter continuing until satisfaction of Kristine Rizzati's HECM, Celink and FAR deceptively and in breach of contract listed the amount of Plaintiff Rizzati's mother's HECM as containing the unlawful Attorney Fees and Costs, plus additional interest and MIPs based upon those fees.

93.     Upon information and belief, Celink, RMF and Carrington did not provide Plaintiff Simpson's mother, Dathel Balch and Plaintiff Whitaker's father with a timely Property Charge Delinquency Letter.  Celink, RMF and Carrington also did not notify Plaintiff Simpson's mother, Dathel Balch and Plaintiff Whitaker's father of all available loss mitigation options, such as entering into a repayment plan or seeking an "At Risk Extension" and failed to provide them with 30 days to cure any default before requesting HUD permission to call the loan due and payable.   Celink, RMF and Carrington nevertheless charged their HECM loan Attorney's Fees and Costs and Appraisal Fees in violation of 24 C.F.R. §206.207(a)(1)(ii).  In every monthly statement thereafter continuing to the present, Celink, RMF and Carrington unfairly and deceptively and in breach of contract listed the amount of Plaintiff Simpson's mother's and Plaintiff Whitaker's father's HECMs as containing the unlawful Attorney Fees and Costs and Appraisal Fees, plus additional interest and MIPs based upon those fees.

94.     Upon information and belief, Celink and RMF did not provide Dathel Balch with a timely Property Charge Delinquency Letter.  Celink and RMF also did not notify Dathel Balch of all available loss mitigation options, such as entering into a repayment plan or seeking an "At Risk Extension" and failed to provide her with 30 days to cure any default before requesting HUD permission to call the loan due and payable.  Celink and RMF nevertheless charged her HECM loan Attorney's Fees and Costs and Appraisal Fees in violation of 24 C.F.R. §206.207(a)(1)(ii).   In every monthly statement thereafter continuing to the present, Celink and RMF deceptively and in breach of contract listed the amount of Dathel Balch's HECM as containing the unlawful Attorney Fees and Costs and Appraisal Fees, plus additional interest and MIPs based upon those fees.

95.     Charging Disputed Fees not permitted by 24 C.F.R. §206.207 breaches Plaintiffs' and Class members' *Mortgage Agreements* (Sections entitled "Charges to Borrower and Protection of Lender's Rights in the Property," "Fees" and "Grounds for Acceleration of Debt ... Notice to Secretary and Borrower"), *Conversion Loan Agreements* (Sections entitled "Charges and Fees" and "Protection of Property") and *Notes* (Section entitled "Payment of Costs and Expenses.").   Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

96.     Adding interest and MIPs in violation of 24 C.F.R. §206.207 breaches Plaintiffs' and Class members' *Conversion Loan Agreements* (Sections entitled "Interest" and "Mortgage Insurance Premium (MIP); Monthly Charge").  Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

**B.     VIOLATIONS OF NEW YORK LAWS AND REGULATIONS**

97.     Plaintiffs' and Class members' HECM *Mortgage Agreements* and *Conversion Loan Agreements,* and HUD regulations, mandate that lenders, mortgagees, servicers and subservicers comply with the law in the State where the property is located.

(i)        **Defendants Did Not Comply with New York RPL §§ 280 and 280-a**

98.        In New York, mortgagors age 60-70 are entitled to the protections afforded under New York Real Property Law ("RPL") §280, while mortgagors over age 70 are protected under New York RPL §280-a.  All reverse mortgages and mortgagors are protected by New York RPL §280-b.  RPL §280-b mandates that all HECM lenders, servicers and subservicers comply with all HUD HECM rules and regulations, and violations entitle HECM mortgagees and any other injured person to file an express private of action.

99.        Celink and the Master Servicer Defendants violated New York RPL §280(2)(f) and RPL §280-a(2)(m).  Both statutes provide:

> [I]n the event that an authorized lender or holder of the reverse mortgage loan intends to initiate foreclosure proceedings the mortgagor shall have the right to designate a third party who shall be notified.  In the event that the mortgagor has not designated a third party to receive such notice of foreclosure, then the authorized lender or the holder of said reverse mortgage loan *shall notify* the local or county office for the aging of its intent to commence foreclosure proceedings. Such entity *shall take* appropriate action to protect the interests of the mortgagor;

 (Emphasis added).

100.        As a matter of policy and practice, Celink and the Master Service Defendants did not comply with New York RPL §280(2)(f) and §280-a(2)(m).

101.        In 2022, Celink and FAR commenced a foreclosure lawsuit against Plaintiff Rizzati as a heir and next of kin to her mother Kristine Rizzati in the New York State Supreme Court located in Nassau County.  The foreclosure action was premised on Kristine Rizzati's HECM and reverse mortgage and filed in violation of the pre-filing notice requirements mandated by New York RPL §280(2)(f) and §280-a(2)(m).

102.        All Disputed Fees, and the interest and MIPs charged on those Disputed Fees, added to Plaintiff Rizzati's mother's HECM loan by Celink and FAR, were added in violation of New York RPL §280(2)(f) and §280-a(2)(m).  In every monthly statement thereafter, Celink and FAR deceptively in

breach of contact listed the amount of Plaintiff Rizzati's mother's HECM as containing those Disputed Fees, and interest and MIPs added to the Disputed Fees.

103.    Plaintiff Rizzati's mother and New York Subclass members have been injured and continue to be injured by Celink's and the Master Servicer Defendants' violations of New York RPL §280-(2)(f) and §280-a(2)(m).

**(ii)    Defendants Violate New York RPL §280-b**

104.    RPL §280-b mandates that all HECM lenders, servicers and servicers comply with HUD's rules and regulations:  Reverse mortgages secured by residential real property within the state shall be subject to the rules and regulations of the federal Department of Housing and Urban Development relating to the home equity conversion mortgage program.  RPL §280-b(4)(a).

105.    Violations of any HUD rule and regulation pertaining to a HECM loan entitles any injured person to commence and private right of action.  RPL §280-b(8).

106.    Plaintiff Rizzati's mother and New York Subclass members have been injured and continue to be injured by  Celink's and the Master Servicer Defendants' violations of HUD's rules and regulations since the effective date of RPL §280-b, as pled in this Complaint, including: (i) 24 C.F.R. §206.125(d); (ii) 24 C.F.R. §203.552; (iii) 24 C.F.R. §206.207; (iv) HUD Mortgagee Letter 2016-03 and HUD Handbook 4000.1, Appx. 5; and (v) HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1(III)(B)(2)(c)(ii)(B).

**C.    VIOLATIONS OF CALIFORNIA LAWS AND REGULATIONS**

107.    Plaintiffs' and Class members' HECM *Mortgage Agreements* and *Conversion Loan Agreements,* and HUD regulations, mandate that lenders, mortgagees, servicers and sub-servicers comply with the law in the State where the property is located.

108.    Celink and the Master Servicer Defendants violated Cal. Civ. Code §2954.5 by adding the Disputed Fees to Plaintiff Whitaker's father's HECM and California Subclass members' HECMs

and reverse mortgage loans without having provided the required prior notice of those default and delinquency fees.

109.    Plaintiff Whitaker's father and California Subclass members have been injured and continue to be injured by Celink's and the Master Servicer Defendants' violations of Cal. Civ. Code §§ 2924c and 2954.5.  Among Defendants' violations are the failure to provide required notices before charging default and delinquency fees (including all the Disputed Fees) and charging costs and expenses (including all the Disputed Fees) after a Notice of Default.

D.    CHARGING INSPECTION FEES IN VIOLATION OF STATE LAWS

110.    Charging inspection fees to mortgage mortgagors is prohibited in Maryland, Mississippi, New Hampshire, New Jersey, New York (after July 29, 2020; 3 N.Y.C.R.R. §79.8), Utah, Vermont and West Virginia.

111.    Charging inspection fees to mortgage mortgagors after a notice of default has been filed is prohibited in California.

112.    Celink and the Master Servicer Defendants violated the laws in California, Maryland, Mississippi, New Hampshire, New Jersey, New York, Utah, Vermont and/or West Virginia by charging inspection fees.

113.    Plaintiff Whitaker's father, California Subclass members and other Class members have been injured and continue to be injured by Celink's and the Master Servicer Defendants' violations of state laws or regulations, including Cal. Civ. Code §§ 2924c and 2954.5, prohibiting the imposition of inspection fees.

E.    BREACHES OF STANDARDIZED HECM LOAN AGREEMENTS

114.    By charging the Disputed Fees to Class members nationwide for Count I and in New York for Count II, Celink and the Master Servicer Defendants breached the Sections of the Plaintiffs'

and Class members' standardized *Mortgage Agreements* entitled "Inspection," "Fees," "Grounds for Acceleration of Debt ... Notice to Secretary and Borrower" and "Foreclosure Procedure."[2]

115. By charging the Disputed Fees to Class members nationwide for Count I and in New York for Count II, Celink and the Master Servicer Defendants breached the Sections of Plaintiffs' and Class members' standardized *Conversion Loan Agreements* entitled "Charges and Fees," "Interest," and "Mortgage Insurance Premium (MIP); Monthly Charge."[3] Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

116. By charging the Disputed Fees to Class members nationwide for Count I and in New York for Count II, by charging the Disputed Fees to Class members nationwide Celink the Master Servicer Defendants breached the Section of the Plaintiffs' and Class members' standardized *Notes* entitled "Immediate Payment-in-Full ... Payment of Costs and Expenses."[4] Because the loan principal was inflated by the Disputed Fees, the interest and MIP added to Class members' loans was overstated.

## F.    UNFAIR AND DECEPTIVE MISSTATEMENTS OF HECM PRINCIPAL BALANCES

117. For all Plaintiffs and Class members, Celink, on behalf of the Master Servicer Defendants, sent statements each month and annually that unfairly and deceptively misstated and overstated the amount owed on mortgagors' HECM loans due to the addition of Disputed Fees and resulting interest and MIPs. These monthly and annual statements are required by statute and HUD regulations.

## G.    PLAINTIFFS' INJURIES

118. Plaintiff Rizzati's mother has been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink and FAR pled in this Complaint. Between just

---

[2] These are Sections 6, 8, 9(d) and 20 in Plaintiffs Simpson's (Forseth) and Balch's *Mortgage Agreements* Sections 6, 8, 10 and 24 in Plaintiffs Whitaker's and Rizzati's *Mortgage Agreements*.

[3] These are Sections 2.4, 2.12 and 2.13 in Plaintiffs' *Conversion Loan Agreements*.

[4] This is Section 6(C), 7(C) or 7(D) in Plaintiffs' *Notes*.

April 7, 2022 and April 22, 2025, Celink as the subservicer and agent for FAR added $14,027.32 to Plaintiff Rizzati's mother's HECM principal balance in Disputed Fees. Those Disputed Fees are listed on their monthly statements as "Payment for Attorney Fees / Costs." All, or a substantial portion, of those Disputed Fees are improper based on the breaches of contract, breaches of the duties of good faith and fair dealing, and unlawful acts, practices, and conduct alleged in this Complaint.

119.    In addition, Celink and FAR charged, *and continued to charge until sale of the property*, compounding interest on the Disputed Fees at an annual adjustable rate of 3% above LIBOR (or a substituted index) added to Plaintiff Rizzati's mother's HECM principal balance.

120.    In addition, Celink and FAR have charged, *and continued to charge until sale of the property*, increased MIPs on the Disputed Fees at an annual rate of .5% added to Plaintiff Rizzati's mother's HECM principal balance.

121.    Plaintiff Simpson's mother has been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink, RMF and Carrington pled in this Complaint. Between just December 17, 2020 and January 30, 2024, Celink as the subservicer and agent for RMF and Carrington added $8,833.88 to Plaintiff Simpson's mother's HECM principal balance in Disputed Fees. Those Disputed Fees are listed on their monthly statements as "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation." All, or a substantial portion, of those Disputed Fees are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

122.    In addition, Celink, RMF and Carrington charged, *and continued to charge until sale of the property*, compounding interest on the Disputed Fees at an annual adjustable rate of 1% above the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, added to Plaintiff Simpson's mother's HECM principal balance.

35

123.    In addition, Celink, RMF and Carrington have charged, *and continue to charge*, increased MIPs on the Disputed Fees at an annual rate of .5% added to the principal balance of Plaintiff Simpson's mother's HECM loan.

124.    Dathel Balch has been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink and pled in this Complaint.  Between just October 1, 2021 and February 16, 2023, Celink as the subservicer and agent for RMF added $5,477.00 to Dathel Balch's HECM principal balance in Disputed Fees.   Those Disputed Fees are listed on their monthly statements as "Payment for Property Inspection," "Payment for Property Appraisal," and "Payment for Attorney Fees / Costs."   All, or a substantial portion, of those Disputed Fees are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

125.    In addition, Celink and RMF have charged, *and Celink continues to charge*, compounding interest on the Disputed Fees at an annual adjustable rate of 1.5% above the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year added to the principal balance of Dathel Balch's HECM loan.

126.    In addition, Celink and RMF have charged, *and Celink continues to charge*, increased MIPs on the Disputed Fees at an annual rate of .5% added to the principal balance of Dathel Balch's HECM loan.

127.    Plaintiff Whitaker's father has been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink, RMF and Carrington pled in this Complaint. Between just November 2, 2020 and June 24, 2024, Celink as the subservicer and agent for RMF and Carrington added $3,238.98 to Plaintiff Whitaker's father HECM principal balance in Disputed Fees. Those Disputed Fees are listed on their monthly statements as "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation."  All, or a substantial portion, of those Disputed Fees are improper based on the breaches

36

of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

128. In addition, Celink, RMF and Carrington charged, *and continued to charge until sale of the property*, compounding interest on the Disputed Fees at an annual adjustable rate of 2.75% above LIBOR (or a substituted index), added to the principal balance of Plaintiff Whitiker's father's HECM loan.

129. In addition, Celink, RMF and Carrington have charged, *and continued to charge until sale of the property*, increased MIPs on the Disputed Fees at an annual rate of .5% added to the principal balance of Plaintiff Whitaker's father HECM loan.

130. Plaintiff Hawkins' mother has been damaged and injured as a direct and proximate result of the unlawful acts, policies and practices of Celink pled in this Complaint. Celink as the servicer, subservicer and/or agent for RMF added at least $1,663.00 to Plaintiff Hawkins' mother's HECM principal balance in Disputed Fees. Those Disputed Fees are listed on their monthly statements as "Payment for Property Inspection," "Payment for Property Appraisal," and "Payment for Property Preservation." All, or a substantial portion, of those Disputed Fees are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

131. In addition, Celink charged, *and continue to charge*, compounding interest on the Disputed Fees at an annual adjustable rate of 3.75% (or as adjusted by the index), added to the principal balance of Plaintiff Hawkins' mother's HECM loan.

132. In addition, Celink charged, *and continue to charge*, increased MIPs on the Disputed Fees added to the principal balance of Plaintiff Hawkins' mother's HECM loan.

133. The unlawful Disputed Fees, interest and MIPs added to Plaintiffs' and all Class members' HECM and reverse mortgage principal balances, are listed as debts owed and were (for Plaintiff

Rizzati's mother, Plaintiff Simpson's mother and Plaintiff Whitaker's father) or will be repaid (for Michael Hawkins' mother and Dathel Balch) upon sale of the homes securing the HECMs or satisfaction of the HECM loans. When the homes are sold, the Disputed Fees and inflated interest and MIPs added by Defendants were or will be deducted from the sale proceeds payable to Plaintiffs (and Class members) or their heirs.

## VII.    CLASS ACTION ALLEGATIONS

134.    Plaintiffs bring this action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of themselves individually and the Classes defined as follows:

(a).    The Disputed Fees Class. All mortgagors, and heirs and estates of mortgagors, who had a HECM or reverse mortgage loan serviced or subserviced by Celink since December 21, 2012 and whose loans were charged or assessed one or more Disputed Fees.

(b).    The New York Subclass. All members of the Servicing Fees Class whose homes securing the HECM or reverse mortgage loans were located in New York.

(c).    The California Subclass. All members of the Servicing Fees Class whose homes securing the HECM or reverse mortgage loans were located in California.

(d).    The Pennsylvania Subclass. All members of the Servicing Fees Class whose homes securing the HECM or reverse mortgage loans were located in Pennsylvania.

135.    Excluded from the Disputed Fees Class, the New York Subclass the California Subclass and the Pennsylvania Subclass (collectively, the "Classes") are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff assigned to this action.

136.    Upon information and belief, the Classes each contain thousands of individuals whose identities can be readily ascertained from Defendants' books and records. Plaintiffs do not know the exact size or identities of the proposed classes, since such information is in the exclusive control of Defendant.

137.    Common questions of law and fact raised in this action on behalf of the Classes include the following:

(a)    Whether Celink and/or the Master Servicer Defendants added the Disputed Fees in violation of federal laws and regulations.

(b)    Whether Celink and/or the Master Servicer Defendants added the Disputed Fees in violation of state laws and regulations.

(c)    Whether and/or the Master Servicer Defendants added the Disputed Fees in violation of HUD-standardized loan agreements.

(d)    The amounts in which Class members were damaged by Defendants' unlawful and inequitable acts, practices and conduct; and

(e)    Whether the Class members are entitled to restitution, disgorgement, a constructive trust, declaratory relief and/or injunctive relief.

138.    Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs retained able counsel with extensive experience in consumer and mortgagor class action litigation. The interests of Plaintiffs are coincident with, and not antagonistic to, the interests of the other Class members.

139.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

140.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members.

141.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually

redress the wrongs done to them. The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. The Court will encounter no difficulty in managing this action as a class action.

## VIII.  CELINK IS AN AGENT AND ATTORNEY-IN-FACT FOR THE MASTER SERVICER DEFENDANTS

142.    Celink admitted in the *Shakespeare Action* that RMF ceded "day-to-day servicing functions" over their HECM loan portfolios to Celink. *Shakespeare Action* Dkt. 98 at 2, n.3.

143.    Celink was, is and remains the express, implied and apparent agent of the Master Servicer Defendants for Plaintiffs' and Class members' HECM loans. Celink was designated by the Master Servicer Defendants to perform their obligations under Plaintiffs' and Class members' HECM and reverse mortgage agreements. Celink was and is in privity, or near privity, with Plaintiffs and Class members such that it is liable for breach of contract.

144.    RMF filed a declaration in the *Shakespeare Action* admitting that Celink is responsible to perform RMF's servicing obligations under Plaintiff Shakespeare's and Class members' HECM and reverse mortgage loans. *Shakespeare Action* Dkt. 82-8, ¶7 ("Celink remits payments to, from, or on behalf of, Plaintiff, is responsible for certain foreclosure services, and provides the personnel to perform such services in compliance with applicable law and guides."); *Shakespeare Action* Dkt. 82-8, ¶8 ("Celink is also responsible for maintaining accurate records and reports concerning Plaintiff's [Shakespeare's] Loan, including accurate records of payments received, collected, or remitted. Likewise, Celink is responsible for communicating with Plaintiff regarding her account."); *Shakespeare Action* Dkt. 82-8, ¶9 ("Celink also provides the systems necessary to service Plaintiff's Loan, including its proprietary computer software, ReverseServTM.").

145.    RMF also admitted in the *Shakespeare Action* that it delegated to Celink the decision to impose all the allegedly unlawful fees, costs, charges, penalties, interest and mortgage insurance assessments challenged in this lawsuit. *Shakespeare Action* Dkt. 82-8, ¶10 ("Celink fulfills all servicing and administrative

functions with respect to Plaintiffs Loan, and maintains all related servicing records, which includes maintaining (and potentially modifying) electronic records concerning fees, costs, charges, interest and insurance premiums that have been assessed, or are due and owing.").

146.    In the *Reverse Mortgage Servicing Agreement*, dated October 19, 2012, between RMF and Celink, RMF granted Celink powers sufficient to be RMF's agent to perform all RMF's obligations deriving from HECM mortgagors' loan agreements.  Those express powers granted by RMF to Celink were contained in subsequent servicing agreements between RMF and Celink.

147.    Among the many powers conferred by RMF to Celink in their *Reverse Mortgage Servicing Agreement*, "Celink agrees to commence foreclosure actions requested by RMF that meet RMF's, or any other Investor's or Insurer's servicing guidelines."

148.    That same *Reverse Mortgage Servicing Agreement* expressly identifies Celink as RMF's agent: "All documents and instruments held in the custody of **Celink** (**as agent for RMF**) shall be held by Celink for the benefit of, and as agent for, RMF as the legal owner thereof."  (Emphasis added).

149.    Through May 2021, Celink's Chief Executive Officer and Chairman was a co-founder and the former Chief Operating Officer of RMF.   He remains the Chairman of Celink.

150.    In foreclosure lawsuits filed in the name of the Master Servicer Defendants, Celink has filed affidavits asserting that the Master Servicer Defendants designated Celink as their "attorney-in-fact" concerning the HECM and reverse mortgage loans owned, held and/or serviced by the Master Servicer Defendants.  *See Fin. of Am. Reverse Llc v. Wright*, No. 618948-2020, 2021 N.Y. Misc. LEXIS 14800, *1 (N.Y. Sup. Ct. Sept. 30, 2021) (referencing the affidavit of "Elizabeth Birk who is an Assistant Secretary of Compu-Link Corporation, d/b/a Celink as Attorney-In Fact for Finance of America Reverse LLC"); *Carrington Mortg. Servs., LLC v. Unknown Heirs*, No. 135607-20-19, 2023 N.Y. Misc. LEXIS 23762, *1 (N.Y. Sup. Ct. Sept. 21, 2023) (referencing the affidavit of "Samantha Blom

who is an Assistant Secretary of Compu-Link Corporation, d/b/a Celink as Attorney-in-Fact to[] CARRINGTON MORTGAGE SERVICES, LLC").

151.    In foreclosure lawsuits filed in the name of RMF in the New York State courts, Celink is identified as RMF's "Power of Attorney" and "Attorneys-in-Fact" pursuant to a *Subservicing Agreement* dated November 30, 2016.  That Power of Attorney identifies RMF as Celink's "Principal" and expressly confers rights to Celink as RMF's agent.

152.    As the Master Servicer Defendants' agent, attorney-in-fact and power of attorney, Celink retains the law firm(s) that file HECM loan foreclosure lawsuits in the Master Servicer Defendants' names.  Further, Celink is identified in court records as the "Foreclosure Manager," approving the substitution of law firms representing the Master Servicer Defendants in foreclosure lawsuits.

## IX.    THE MASTER SERVICER DEFENDANTS RATIFIED CELINK'S UNLAWFUL ACTS

153.    The Master Servicer Defendants are directly liable for all unlawful acts and practices pled in this Complaint since acquiring and taking assignment of Plaintiffs' and Class members' HECM loans and servicing obligations.

154.    RMF conceded in its bankruptcy proceeding that, "As a servicer, the Company [RMF] is responsible for servicing activities ...."). *In re: Reverse Mortgage Investment Trust, Inc., et al.*, D. Del. No. 22-bk-1125(MFW) ("RMF D. Del. Bk. Dkt."), Dkt. 45 at ¶64

155.    In addition, the Master Servicer Defendants are liable as the principals to their agent and subservicer Celink for the unlawful acts, practices and liabilities of Celink pled in this Complaint.  The Master Servicer Defendants ratified Celink's unlawful actions alleged in this Complaint.

## X.    TOLLING

156.    The claims pled in this case for Plaintiffs and the Classes have been tolled during the pendency of the putative class action styled *Shakespeare v. Compu-Link Corp. d/b/a Celink, et al.,* E.D.N.Y

No. 18-cv-7299-JMA-AYS and *Dancy-Wilkins v. Compu-Link Corp. d/b/a Celink, et al.,* E.D.N.Y No. 22-cv-6208-SJB-LGD.  *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).[5]

---

[5] Plaintiffs and the plaintiffs in the *Shakespeare* and *Dancy-Wilkins* actions intend to file a motion to consolidate the three actions and permission to file a consolidated *Class Action Complaint*.

## XI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

#### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)

157.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

158.    By charging the Disputed Fees to Class members nationwide, Celink and the Master Servicer Defendants, breached the Sections of the Plaintiffs' and Class members' standardized *Mortgage Agreements* entitled "Inspection," "Fees," "Grounds for Acceleration of Debt ... Notice to Secretary and Borrower" and "Foreclosure Procedure."[6]

159.    By charging the Disputed Fees to Class members nationwide, Celink and the Master Servicer Defendants breached the Sections of Plaintiffs' and Class members' standardized *Conversion Loan Agreements* entitled "Charges and Fees," "Interest," and "Mortgage Insurance Premium (MIP); Monthly Charge."[7]

160.    By charging the Disputed Fees to Class members nationwide, Celink and the Master Servicer Defendants breached the Section of the Plaintiffs' and Class members' standardized *Notes* entitled "Immediate Payment-in-Full ... Payment of Costs and Expenses." [8]

161.    Plaintiffs and Class members are the mortgagors or representatives, agents or administrators of mortgagors to HECM and reverse mortgage loan agreements.  Those loan agreements are uniform and standardized instruments.

---

[6] These are Sections 6, 8, 9(d) and 20 in Plaintiffs Simpson's (Forseth) and Balch's *Mortgage Agreements* Sections 6, 8, 10 and 24 in Plaintiffs Whitaker's and Rizzati's *Mortgage Agreements*.

[7] These are Sections 2.4, 2.12 and 2.13 in Plaintiffs' *Conversion Loan Agreements*.

[8] This is Section 6(C), 7(C) or 7(D) in Plaintiffs' *Notes*.

162.    Celink and the Master Servicer Defendants are or were obligated to comply with the terms of those loan agreements as the lender, mortgagee, servicer, subservicer, agent or attorney-in-fact of the lender, mortgagee or servicer, assignee, successor to the lender, mortgagee or servicer.

163.    Celink and the Master Servicer Defendants are or were in privity, near privity or functional privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

164.    Celink and the Master Servicer Defendants breached the Section of Plaintiffs' and Class Members' mortgage agreements styled "Inspections" in the manner pled in this Complaint, including by imposing Inspection Fees and Appraisal Fees when prohibited by HUD and state laws and regulations.

165.    Celink and the Master Servicer Defendants breached the Section of Plaintiffs' and Class Members' mortgage agreements styled "Fees" in the manner pled in this Complaint, including by imposing each of the Disputed Fees when prohibited by HUD and state laws and regulations.

166.    Celink and the Master Servicer Defendants breached the Section of Plaintiffs' and Class Members' mortgage agreements styled "Grounds for Acceleration of Debt" and subsection entitled "Notice to Secretary and Borrower" in the manner pled in this Complaint, including by imposing each of the Disputed Fees related to a foreclosure lawsuit having failed to provide the pre-default and pre-foreclosure notices required by HUD and state laws and regulations.

167.    Celink and the Master Servicer Defendants breached the Section of Plaintiffs' and Class Members' mortgage agreements styled "Foreclosure Procedure" in the manner pled in this Complaint, including by imposing each of the Disputed Fees related to a foreclosure lawsuit having failed to provide the pre-default and pre-foreclosure notices required by HUD and state laws and regulations.

168.    Celink and the Master Servicer Defendants breached the Section of Plaintiffs' and Class Members' *Conversion Loan Agreements* styled "Charges and Fees" in the manner pled in this Complaint, including by imposing Attorney's Fees and Costs in violation of 24 C.F.R. §206.207.

169.    Celink and the Master Servicer Defendants breached the Section in Plaintiffs' and Class Members' *Conversion Loan Agreements* styled "Interest" providing that "Interest shall be calculated as provided in the Loan Documents" by charging interest on HECM principal balances inflated by the unlawful Disputed Fees.

170.    Celink and the Master Servicer Defendants breached the Section in Plaintiffs' and Class Members' *Conversion Loan Agreements* styled "Mortgage Insurance Premium (MIT); Monthly Charge" by charging MIPs on HECM principal balances inflated by the unlawful Disputed Fees.

171.    Celink and the Master Servicer Defendants breached the Section in Plaintiffs' and Class Members' *Notes* styled "Immediate Payment-in-Full" and subsection "Payment of Costs and Expenses" in the manner pled in this Complaint, including by imposing the Disputed Fees in an manner prohibited by applicable law and unrelated to the sale of properties securing Plaintiffs' and Class members' loans.

172.    Plaintiffs and Class members have been injured and damaged as a direct and proximate result of Celink's and RMF's breaches of Plaintiffs' and Class members' HECM and reverse mortgage loan agreements.

173.    As a direct result of Celink's and the Master Servicer Defendants' breaches of contract, Defendants imposed and/or collected the Disputed Fees and accrued interest and MIPs that have been added to the principal balances of Plaintiffs' and Class members' HECM and reverse mortgage loans, and have been or must be paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Subclass members.

174.    To remedy Celink's and the Master Servicer Defendants' breaches of contract, Plaintiffs and the Classes seek damages, equitable remedies including an injunction and all other appropriate remedies.

175.     Plaintiffs are or were at all relevant times in compliance with and not in breach of their HECM loan agreements, cured any breach, or alternatively, Defendants elected their remedy(ies) to continue to perform under those loan agreements even after asserting a breach by any Plaintiff.

## SECOND CAUSE OF ACTION

**BREACH OF DUTIES AND COVENANTS OF GOOD FAITH AND FAIR DEALING (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)**

176. Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

177. Plaintiffs and Class members are the mortgagors or representatives, agents or administrators of mortgagors to HECM loan agreements.

178. Celink and the Master Servicer Defendants are or were obligated to comply with the terms of those loan agreements as the lender, mortgagee, servicer, agent or attorney-in-fact of the lender or servicer, successor to the lender, mortgagee or servicer.

179. Celink and the Master Servicer Defendants are or were in privity, near privity or functional privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

180. Celink and the Master Servicer Defendants each possessed discretion to interpret and apply the HECM and reverse mortgage loan agreements provided to Plaintiffs and Class members.

181. Celink and the Master Servicer Defendants each owed Plaintiffs and Class members implied covenants and duties of good faith and fair dealing to not deprive them of the benefits of the HECM and reverse mortgage loan agreements, and not to apply their discretion over the agreements arbitrarily, irrationally, in bad faith, or in a manner that benefitted Celink and/or the Master Servicer Defendants and harmed Plaintiffs and Class members. Celink and the Master Servicer Defendants each breached their implied covenants and duties of good faith and fair dealing by acting with bad faith and applying their discretion in a manner designed to harm Plaintiffs and Class members and to financially benefit Celink and/or the Master Servicer Defendants.

48

182.     As a result of its breaches of their implied duties and covenants of good faith and fair dealing, Celink and/or the Master Servicer Defendants imposed and/or collected fees, costs, penalties, charges, interest and MIPs that have been added to the principal of Plaintiffs' and Class members' HECM loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and Class members.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349**

**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF RIZZATI AS ADMINISTRATOR FOR THE ESTATE OF KRISTINE RIZZATI AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)**

183.    Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati, restate, re-allege and incorporate by reference the foregoing paragraphs.

184.    Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and the members of the New York Subclass are "persons" within the meaning of GBL §349(h).

185.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."[9]

186.    Celink and the Master Servicer Defendants engaged in consumer-orientated, deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint.  *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021) ("Shakespeare has also satisfied 'the threshold test in that the acts [she] complain[s] of are consumer-oriented in the sense that they potentially affect similarly situated consumers.'") (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017).

187.    Celink and the Master Servicer Defendants engaged in deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

---

[9] In February 2026, GBL §349(a) will be amended in relevant part to state: "Unfair, deceptive or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

(a).    Deceptively and unlawfully charging appraisal fees to Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and New York Subclass members after declaring their loans due and payable, in violation of 24 C.F.R. §206.125(b);

(b).    Deceptively and unlawfully charging foreclosure-related fees, costs and charges to Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and New York Subclass members in violation of 24 C.F.R. §206.125(d), which prohibits the filing of any state foreclosure lawsuit *until after* the mortgagee, servicer and servicing agent comply with all State law requirements for filing a foreclosure lawsuit, including those provided in New York RPL §§280(2)(f) and 280-a(2)(m) and 3 N.Y.C.R.R. §79.9 (and as re-codified in 3 N.Y.C.R.R. §79.7);

(c).    Deceptively and unlawfully adding inspection and property preservation fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R. §206.140, including for properties that were not vacate or abandoned and by adding such fees more frequently than permitted;

(d).    Deceptively and unlawfully adding Disputed Fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R. §203.552, which proscribes any fee or charge not listed in that regulation, and further proscribes any fee or charge imposed above "the actual cost of the work performed" or that are above the "reasonable and customary" amount, including the limits on attorneys' fees permitted by HUD Mortgagee Letter 2016-03 and HUD Handbook 4000.1, Appx. 5;

(e).    Deceptively and unlawfully charging Disputed Fees and related interest and MIPs to Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and New York Subclass members' loans in violation of 24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM mortgagors' principal balances, including appraisal and inspection fees, unlawful filing, preparation and maintenance of foreclosure lawsuits without complying with pre-filing notice requirements and the imposition of attorneys' fees and costs containing false, inflated and unreasonable costs.

(f).    Deceptively and unlawfully filing foreclosure lawsuits against Plaintiff Rizzati and New York residents without having provided prior notice to either a third-party designated by the mortgagor or to the New York local or county Office for the Aging of its intent to commence foreclosure proceedings, as required by New York RPL §§280(2)(f) and 280- a(2)(m); and

(g).    Deceptively and unlawfully adding fees and charges to Plaintiff Rizzati mother's and New York Subclass members' loans in violation of New York RPL §280-b(4)(a), which requires all HECM lenders, servicers and subservicers to comply will all HUD rules and regulations.

*See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021) ("[W]e conclude that the complaint raised sufficiently plausible claims under Section 349 to survive the motion to dismiss and proceed to summary judgment.").

188.    Celink and the Master Servicer Defendants make further false and deceptive statements each time they send monthly mortgage statements to mortgagors misrepresenting the amount owned by HECM and reverse mortgage mortgagors, which amounts are inflated by improper fees, costs, charges, penalties, interest and mortgage insurance. Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus.

189.    Celink and the Master Servicer Defendants make further false and deceptive statements each time after July 29, 2020 they send monthly mortgage statements to mortgagors containing inspection fees.

190.    Celink's and the Master Servicer Defendants' conduct alleged in this Count is deceptive because those acts and practices are likely to mislead consumers, mortgagors and the public by making them believe, falsely, that (i) monthly mortgage statements and other correspondence accurately represent the amount owed on HECM and reverse mortgage loans; and (ii) Defendants were entitled to add the Disputed Fees to the mortgage principal balance when they were not because they failed to

comply with federal and state law notice of delinquency prior to calling the loan due and payable, and failed to comply with pre-foreclosure filing requirements prior to initiating a foreclosure action.

191.    Celink's and the Master Servicer Defendants' violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the New York Subclass. Celink's and the Master Servicer Defendants' violations of GBL §349 caused Plaintiffs' and New York Subclass members' injuries because absent their violations Plaintiff Rizzati's mother and New York Subclass members would not have been charged the unlawful Disputed Fees and inflated interest and MIPs imposed on their reverse mortgages.

192.    In addition to their pecuniary losses, Plaintiff Rizzati and the New York Subclass suffered actual harm as a direct, foreseeable and proximate result of Celink's and the Master Servicer Defendants' violations of GBL§349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiff Rizzati and the New York Subclass.

193.    Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and the New York Subclass are entitled to pursue claims against Celink and the Master Servicer Defendants for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorneys' fees pursuant to GBL §349(h) to redress Celink's and the Master Servicer Defendants' violations of GBL §349(a).

194.    Plaintiff Rizzati as Administrator for the Estate of Kristine Rizzati and New York Subclass members who were sixty-five years of age or older at the time of Defendants' violations of GBL §349 are entitled to pursue additional claims and remedies pursuant to GBL §349-c to redress Celink's and the Master Servicer Defendants' violations of GBL §349(a) perpetrated against one or more elderly persons.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF WHITAKER AS EXECUTOR FOR THE ESTATE OF RUFUS WHITAKER AND QUALIFYING MEMBERS OF THE CALIFORNIA SUBCLASS)

195.    Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker restates, re-alleges and incorporates by reference the foregoing paragraphs.

196.    Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker brings this claim on behalf of themselves and the California Subclass.

197.    Plaintiff Whitaker's father and qualifying California Subclass members were deceived and injured by Celink's and the Master Servicer Defendants' addition of the Disputed Fees to HECM and reverse mortgage loans.

198.    Celink and the Master Servicer Defendants engaged in unfair and/or deceptive acts or practices when, in the course of its business they, among other acts and practices, knowingly made materially deceptive statements, and omitted to disclosure the true facts to Plaintiff Whitaker's father and qualifying California Subclass members, including in correspondence and monthly and annual statements, including the following:

(a).    Unfairly, deceptively and unlawfully charging appraisal fees to Plaintiff Whitaker's father and California Subclass members after declaring their loans due and payable, in violation of 24 C.F.R. §206.125(b);

(b).    Unfairly, deceptively and unlawfully adding inspection and property preservation fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R. §206.140, including for properties that were not vacate or abandoned and by adding such fees more frequently than permitted.

54

(c).    Unfairly, deceptively and unlawfully adding Disputed Fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R. §203.552, which proscribes any fee or charge not listed in that regulation, and further proscribes any fee or charge imposed above "the actual cost of the work performed" or that are above the "reasonable and customary" amount, including the limits on attorneys' fees permitted by HUD Mortgagee Letter 2016-03 and HUD Handbook 4000.1, Appx. 5;

(d).    Unfairly, deceptively and unlawfully charging Disputed Fees and related interest and MIPs to Plaintiffs Whitaker's father's and California Subclass members' loans in violation of 24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM mortgagors' principal balances.

(e).    Unfairly, deceptively and unlawfully making false statements each time they sent monthly mortgage statements to mortgagors misrepresenting the amount owned by HECM and reverse mortgage mortgagors, which amounts are inflated by improper fees, costs, charges, penalties, interest and MIPs.  Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus; and

(f).    Unfairly, deceptively and unlawfully violating Cal. Civ. Code §§ 2924c and 2954.5 by adding the Disputed Fees to Plaintiff Whitaker's father's and California Subclass members' HECM and reverse mortgage loans without having provided the required prior notice of those default and delinquency fees and/or after a Notice of Default; and

(g).    Unfairly, deceptively and unlawfully adding the Inspection Fees after a notice of default has been filed in violation of California law.

199.    Celink and the Master Servicer Defendants intended for Plaintiff Whitaker's father, and California Subclass members to rely on their unfair and deceptive statements and omissions about the Disputed Fees.

200.    Celink's and the Master Service Defendants' unfair and deceptive conduct and omissions were intended to induce Plaintiff Whitaker's father and California Subclass members to believe that the Disputed Fees were appropriate, lawful and owed by Plaintiff Whitaker's father and the California Subclass.

201.    Celink's and the Master Servicer Defendants' conduct constitutes unfair and deceptive acts or practices as defined by the CLRA.

202.    Plaintiff Whitaker's father and the California Subclass members have suffered and/or will suffer injury in fact and actual damages resulting from Celink's the Master Servicer Defendants' unfair and deceptive statements and material omissions.

203.    Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker and the California Subclass seek an order enjoining Celink's and the Master Servicer Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available under the CLRA.

**FIFTH CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA BUS. & PROF. CODE §§ 17200, *ET SEQ*.**

**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS WHITAKER AS EXECUTOR FOR THE ESTATE OF RUFUS WHITAKER AND THE QUALIFYING MEMBERS OF THE CALIFORNIA SUBCLASS)**

204.    Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker restates, re-alleges and incorporates by reference the foregoing paragraphs.

205.    Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker brings this cause of action for violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* individually and on behalf of the California Subclass.

206.    California Bus. & Prof. Code §17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Celink's violations of the CLRA comprise violations of California Bus. & Prof. Code §17200.

207.    Celink's and the Master Servicer Defendants' acts and practices imposing the Disputed Fees as described herein are likely to deceive the public.

208.    Celink's and the Master Servicer Defendants' acts and practices imposing the Disputed Fees violate HUD rules, regulations and mortgage letters, the CLRA, Cal. Civ. Code §§ 2924c and 2954.5, California laws and regulations prohibiting inspection fees and therefore Cal. Bus. & Prof. Code §17200.

209.    Celink's and the Master Servicer Defendants' acts and practices are unlawful, unfair, deceptive, unscrupulous, and injurious to consumers.  They are contrary to the public policy of the State of California, and injurious to competition, in that they create an incentive for competitors to pursue similarly unscrupulous and deceptive tactics.  The harm to consumers outweighs any utility of Celink's and the Master Servicer Defendants' acts.

210.    As a result of the violations asserted in these and all preceding paragraphs, Plaintiff Whitaker as Executor for the Estate of Rufus Whitaker seeks available remedies under Cal. Bus. & Prof. Code §17203 and Cal. Bus. & Prof. Code §3345, including damages, equitable remedies including an injunction, disgorgement, restitution and imposition of a constructive trust, in addition the payment of attorneys' fees and reasonable expenses.

## SIXTH CAUSE OF ACTION

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (AGAINST ALL DEFENDANTS ON BEHALF OF QUALIFYING CLASS MEMBERS)

211.    Plaintiff Hawkins as Administrator for the Estate of Maria Graham restates, re-alleges and incorporates by reference the foregoing paragraphs.

212.    Plaintiff Hawkins as Administrator for the Estate of Maria Graham brings this cause of action for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.* (the "UTPCPL") individually and on behalf of the Pennsylvania Subclass.

213.    Unfair methods of competition and unfair or deceptive actions and practices under the UTPCPL includes any "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."

214.    Unfair methods of competition and unfair or deceptive actions and practices in the practice of any trade or commerce is a violation of the UTPCPL.

215.     Celink and the Master Servicer Defendants engaged in unfair methods of competition and unfair and deceptive acts or practices when, in the course of their business it imposed the Disputed Fees on Plaintiff Hawkins' father's and other Pennsylvania Subclass members' loans and engaged in the following additional acts and practices

(a).    Unfairly, deceptively and unlawfully charging appraisal fees to Plaintiff Hawkins' mother's and Pennsylvania Subclass members after declaring their loans due and payable, in violation of 24 C.F.R. §206.125(b);

(b).    Unfairly, deceptively and unlawfully adding inspection and property preservation fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R.

§206.140, including for properties that were not vacate or abandoned and by adding such fees more frequently than permitted.

(c).    Unfairly, deceptively and unlawfully adding Disputed Fees and related interest and MIPs to the HECM mortgagors' loans in violation of 24 C.F.R. §203.552, which proscribes any fee or charge not listed in that regulation, and further proscribes any fee or charge imposed above "the actual cost of the work performed" or that are above the "reasonable and customary" amount, including the limits on attorneys' fees permitted by HUD Mortgagee Letter 2016-03 and HUD Handbook 4000.1, Appx. 5;

(d).    Unfairly, deceptively and unlawfully charging Disputed Fees and related interest and MIPs to Plaintiff Hawkins' mother's and Pennsylvania Subclass members' loans in violation of 24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM mortgagors' principal balances; and

(e).    Unfairly, deceptively and unlawfully making false statements each time they sent monthly mortgage statements to mortgagors misrepresenting the amount owned by HECM and reverse mortgage mortgagors, which amounts are inflated by improper fees, costs, charges, penalties, interest and MIPs. Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus.

216.    Celink's and the Master Servicer Defendants' conduct constitutes unfair methods of competition and unfair and deceptive acts or practices as defined by the UTPCPL.

217.    Celink and the Master Servicer Defendants intended for Pennsylvania Subclass members to rely on their unfair and deceptive statements and omissions about the Disputed Fees, and Pennsylvania Subclass members justifiably relied on those unfair and deceptive statements and omissions.

218.    Plaintiff Hawkins' mother and the Pennsylvania Subclass members have suffered and/or will continue suffer injury in fact and actual damages resulting from Celink's the Master Servicer Defendants' unfair methods of competition and unfair and deceptive acts or practices.

219.    Plaintiff Hawkins' mother's and the Pennsylvania Subclass members' damages and injury were a direct, proximate and foreseeable result of Defendants' violations of the UTPCPL.

220.    Plaintiff Hawkins as Administrator for the Estate of Maria Graham and the Pennsylvania Subclass seek an order awarding their actual or statutory damages and enjoining Celink's and the Master Servicer Defendants' unfair or deceptive acts or practices and awarding costs and restitution, equitable relief, and any other just and proper relief available under the UTPCPL.

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF STATE CONSUMER PROTECTION LAWS
### IN ADDITION TO NEW YORK, CALIFORNIA AND PENNSYLVANIA

### (AGAINST ALL DEFENDANTS ON BEHALF OF QUALIFYING CLASS MEMBERS)

221.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

222.    In addition to Defendants' violations of New York GBL §349, the CLRA, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.*, Plaintiffs plead claims on behalf of qualifying members of the Disputed Fees Class for the similar violations by Defendants of those state statutes that protect consumers from unfair, deceptive, abusive, misleading and/or unconscionable acts, practices and conduct, whether in the form of misrepresentations or omissions:

(a)    The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska State. §§ 45.50.471 *et seq.*;

(b).    The Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, et seq.;

(c).    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*;

(d).    The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*;

(e).    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*;

(f).    The Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§2511 et seq. and/or the Delaware Uniform Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §2531, *et seq.*;

(g).    The District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §28-3901, *et seq.*;

(h).    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*;

(i).    The Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*;

(j).     The Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 481A-1, *et seq.* and/or Hawaii Rev. Stat. §§ 480-1, *et seq.*;

(k).     The Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq.*;

(l).     The Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq.*;

(m).     The Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*;

(n).     The Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*;

(o).     The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq*;

(p).     The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et seq.*;

(q).     The Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*;

(r).     The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A;

(s).     The Michigan Consumer Protection Act, Mich. Comp. Laws Ann §§ 445-901, *et seq.*;

(t).     The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §§ 325F.68, *et seq.*;

(u).     The Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*;

(v).     The Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.*;

(w).     The Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 *et seq.* and/or Nevada Rev. Stat. §41.600;

(x).     The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann., §§ 358-A:1, *et seq.*;

(y).     The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*

(z).     The New Mexico Unfair Practices Act, N.M. Stat. Ann., §§ 57-12-1, *et seq.*;

(aa).     The North Carolina Monopolies, Trusts and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

(bb).     North Dakota, N.D. Gen. Stat. §§ 51-15-01, *et seq.*;

(cc).    The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.*;

(dd).    The Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, §§ 751, *et seq.*;

(ee).    The Oregon Unlawful Trade Practices Law, Or. Rev. Stat., §§ 646-605 *et seq.*;.

(ff).    The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Law §§ 6-13.1-1, *et seq.*;

(gg).    The South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws Ann. §§ 37-24-1, *et seq.*;

(hh).    The Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*;

(ii).    The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*;

(jj).    The Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*;

(kk).    West Virginia, W.Va. Code §§ 46A-6-101, *et seq.*;

(ll).    Wisconsin, Wisc. Stat. Ann. §§ 100.18, 100.195, 100.264; and

(mm).    The Wyoming Consumer Protection Act, Wyo. Stat. §40-12-101, *et seq.*

223.    Plaintiffs possess standing to plead and represent the claims of the Class for violations of the above-referenced state statutes.  *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d. 88, 95-96 (2d. Cir. 2018).

224.    By the acts, practices, misrepresentations and/or omissions alleged herein, Defendants violated the above-referenced state consumer protection statutes by (a) adding the Disputed Fees when not permitted by federal and state laws and regulations and loan agreements (as pled herein); and (b) deceptively misstating the accurate amount of the lawful principal balance due by Class members in monthly and annual statements.

225.    As a direct, proximate and foreseeable result of Defendants' violations of the above-referenced state consumer protection statutes, members of the Disputed Fees Class have suffered

pecuniary and non-pecuniary injuries, including the payment or assessment of the Disputed Fees and resulting interest and MIPs.

226.    On behalf of members of the Disputed Fees Class, Plaintiffs seek damages and where available statutory damages, treble damages and exemplary damages, an injunction ending Defendants' unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust, pre-and post-judgment interest and costs and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

### UNJUST ENRICHMENT

#### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASS)

227.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

228.    Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to Plaintiffs' and the Classes' claims for breach of contract.

229.    Defendants have each violated the common laws of unjust enrichment in all the states of the United States and the District of Columbia. *See Shakespeare v. Compu-Link Corp. d/b/a Celink*, 848 Fed. App'x 474, 476 (2d Cir. 2021).

230.    Defendants have benefited from the unlawful and inequitable acts alleged in this Complaint.

231.    Plaintiffs and Class members have conferred upon Defendants a traceable economic benefit resulting from the unlawful and inequitable acts alleged in this Complaint.

232.    The economic benefits derived by Defendants are a direct and proximate result of Defendants' unlawful and inequitable acts alleged in this Complaint.

233.    Defendants are not permitted to impose the Disputed Fees on Class members for the reasons and based on the circumstances alleged in this Complaint.

234.    Payments to Defendants resulting from inequitable and unlawful acts rightfully and equitably belong to Plaintiffs and Class members.

235.    Under the common law of all states and territories within the United States, it would be inequitable and unjust for Defendants to retain any portion of the Disputed Fees, interest and MIPs resulting from Defendants' inequitable and unlawful acts.

236.    Plaintiffs' and Class members' unintentional conferral of economic benefits and profits onto Defendants were brought about by Defendants' unlawful, unfair, deceptive, misleading and inequitable methods, acts and practices alleged in this Complaint.

237.    Defendants should be compelled to provide restitution or to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received from them.

238.    A constructive trust should be imposed upon all unlawful or inequitable economic benefits and profits received by Defendants traceable to Plaintiffs and Class members.

## NINTH CAUSE OF ACTION

### VIOLATIONS OF NEW YORK REAL PROPERTY LAW §280-B

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF RIZZATI AS ADMINISTRATOR FOR THE ESTATE OF KRISTINE RIZZITI AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

239.    Plaintiff Rizzati as Administrator for the estate of Kristine Rizzati, restate, re-allege and incorporate by reference the foregoing paragraphs.

240.    Plaintiff Rizzati's mother's HECM loan was a "reverse mortgage loan" entitled to the protections and rights set forth in New York RPL §280-b.

241.    New York RPL §280-b(4)(a) makes its unlawful for any reverse mortgage lender, servicer or subservicer to act in manner contrary to HUD rules and regulations pertaining to HECM loans.

242.    Celink and the Master Servicer Defendants violated RPL §280-b(4)(a) by adding the Disputed Fees to Plaintiffs Rizzati's mother's and New York Subclass members' loans in violation of HUD rules and regulations, including of (i) 24 C.F.R. §206.125(d); (ii) 24C.F.R. §203.552; and (iii) 24 C.F.R. §206.207; (iv) HUD Mortgagee Letter 2016-03 and HUD Handbook, Appx. 5; and (v) HUD Mortgagee Letter 2015-11 and HUD Handbook 4000.1(III)(B)(2)(c)(ii)(B). Those unlawfully added Disputed Fees were repeated in each monthly statement sent by Celink and the Master Servicer Defendants to Plaintiffs Rizzati's mother and New York Subclass members.

243.    Pursuant to New York RPL §280-b(8), Celink and the Master Servicer Defendants are liable to Plaintiff Rizzati's mother and the New York Subclass for their violations of New York RPL §280-b.

244.    Beginning on the effective date of New York RPL §280-b, Plaintiff Rizzati's mother and the New York Subclass are entitled to pursue claims against Celink and the Master Servicer Defendants for damages, treble damages, injunctive relief, costs and attorneys' fees pursuant to New York RPL §280-b(8) to redress Celink's and the Master Servicer Defendants' violations of RPL §280-b.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23, and appointing Plaintiffs and their counsel to represent the Classes;

B.    An order declaring that Celink's and the Master Servicer Defendants' acts and practices constitute breaches of contract;

C.    An order declaring that Celink's and the Master Servicer Defendants' acts and practices constitute breaches and violations of the duties and covenants of good faith and fair dealing;

D.    An order declaring that Celink's and the Master Servicer Defendants' acts and practices constitute violations of New York GBL §349, the CLRA, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the PA UTPCPL and the other state consumer protection laws;

E.    An order declaring that Celink's and the Master Servicer Defendants' acts and practices constitute unjust enrichment;

F.    An order declaring that Celink's and the Master Servicer Defendants' acts and practices constitute violations of New York RPL §280-b;

G.    A permanent injunction;

H.    An order requiring restitution and disgorgement and the creation of a constructive trust for the benefit of Plaintiffs and the Classes;

I.    An order requiring Celink and/or the Master Servicer Defendants to refund, credit and/or remove all unlawfully-added Disputed Fees, interest and MIPs from Plaintiffs' and Class members' HECM and reverse mortgage loans.

J.    Pre-judgment and post-judgment interest to the fullest extent permitted by law;

      K.      Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

      L.      All such other relief as this Court may deem just and proper.

## XIII.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims to the extent authorized by law.

DATED:  January 16, 2026

<div style="margin-left:50%">

**TUSA P.C.**

*/s/ Joseph S. Tusa*
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Floor
Southold, NY  11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF
 & ANDERSON LLP**
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
1 Rockefeller Plaza, 8th Fl.
New York, NY  10020
Tel: (212) 847-8315

**AARP FOUNDATION**
Julie Nepveu (*pro hac vice forthcoming*)
jnepveu@aarp.org
Maame Gyamfi (*pro hac vice forthcoming*)
mgyamfi@aarp.org
601 E Street, NW
Washington, DC  20049
Tel. (202) 434-2060

***Attorneys for Plaintiffs
and Proposed Class Counsel***

</div>